STATE of Wisconsin, Plaintiff-Respondent,

v.

Veronica F. ECHOLS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 91–1446–CR. Oral argument February 3, 1993.—Decided May 6, 1993.*

(Also reported in 499 N.W.2d 631.)

654

655

659

For the defendant-appellant-petitioner there were briefs by *Russel D. Bohach* and *Brennan & Collins*, Milwaukee and oral argument by *Mr. Bohach.*

For the plaintiff-respondent the cause was argued by *William C. Wolford,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

JON P. WILCOX, J. This is a review under sec. (Rule) 809.62, Stats., of an unpublished court of appeals decision affirming a judgment of conviction and an order denying the defendant's post-conviction motions. The defendant was convicted of attempted first degree intentional homicide, party to a crime, in violation of sections 940.01(1), 939.05 and 939.32, Stats. (1989–90), for the attempted murder of her husband, Melvin Echols. Circuit Judge, Robert W. Landry, sentenced the defendant to the maximum twenty years in prison. The defendant raises the following issues for review:

(1) Did the trial court improperly pressure the jury into reaching a verdict by the use of a time constraint?

(2) Did the trial court err by failing to make historical findings of fact on the record to support its denial of the defendant's motion to suppress an incriminating statement she gave to the police?

(3) Did the trial court commit reversible error by failing to allow the defendant to effectively cross-examine Detective Barber?

(4) Did the trial court improperly deny the defendant's motion for a continuance?

(5) Did the trial court err in pronouncing sentence without placing sufficient legal and factual reasons on the record?

We affirm the court of appeals on each of these issues.

Sometime prior to August 14, 1989, the defendant, Veronica Echols, conspired with her son, Terrence Echols a/k/a Terrence Murray, and his friend, Marcus D. Laster, to commit the murder of her husband, Melvin Echols. The defendant offered Marcus Laster $2,500 to kill her husband so she could reap the benefits of his life insurance policy and escape from an alleged abusive relationship.

On the evening of August 14, 1989, Terrence Murray, Marcus Laster and another juvenile went to the home of Melvin Echols. After speaking briefly with Melvin Echols who was sitting in the living room, the three boys went to the basement or the back porch of the house. Shortly thereafter, Marcus Laster re-entered the living room and shot Melvin Echols three times. Melvin Echols survived the shooting and testified that Marcus Laster attempted to shoot him a fourth time, but the gun misfired and Laster fled the scene. The defendant, Veronica Echols, was arrested on August 15, 1989, and charged with party to a crime of attempted first degree intentional homicide.

A jury found the defendant guilty of the crime charged and Circuit Judge, Robert W. Landry, entered a judgment of conviction. Judge Landry sentenced the defendant to the maximum twenty years in prison. Judge Landry denied the defendant's post-conviction motions. The court of appeals affirmed the judgment of conviction and the circuit court order denying the defendant's post-conviction motions. We accepted the defendant's petition for review. We now affirm the court of appeals.

## I.

The first issue is whether the trial court improperly pressured the jury into reaching a verdict by the use of time constraints. The defendant argues that the trial court coerced the jury into returning a verdict by placing a time constraint of twenty minutes on their deliberations. We conclude that the trial court did not coerce the jury verdict.

This case was sent to the jury at approximately 1:30 p.m. on Friday, March 30, 1990. At 5:00 p.m. the jury returned and reported that they had not reached a verdict, but were very close to doing so. The trial court stated that it would adjourn the case until the next morning at 9:00 a.m. One of the jurors then stated that she had non-refundable airline tickets for 10:25 a.m. the next morning for a job interview and asked whether deliberations could begin earlier. The court stated that it was willing to begin deliberations at 7:30 a.m. the next morning. The juror then asked if the jury could finish that night since they were close to a verdict. Defense counsel suggested that the jury be allowed to deliberate for one more hour. The court stated that it could not do that. The court decided to give the jury another twenty minutes to consider the matter. The court's instructions to the jury made it very clear that the jury should not feel pressured to reach a verdict in that time. The court stated:

> THE COURT: All right. Now, I'm going to ask you to do what you choose to do. I want to make it very clear, I want to make it very positive and clear that I'm going to let you go back into the jury room and decide what you want to do. Now, I'm going to give you 20 minutes time in which to do this. I don't want [sic] to use that 20 minutes to do anything impetuous just for the purposes of avoiding any fur-

ther coming back tomorrow or taking a verdict in some other fashion.

If you can reach a verdict conscientiously and be satisfied that each one of you is operating in—consistent with the evidence, the Court's instructions and your own conscience, I'll permit you to do that, but I want to make it very clear to you that I don't want anybody to feel that this is in any way forcing you into an impetuous decision that is not your free and voluntary choice with all the deliberation that the importance of this case deserves. You're excused.

After more than twenty-five minutes, the jury returned with a guilty verdict.

The defendant argues that the trial court coerced the jury into reaching a verdict within a certain time period by placing any holdout jurors in the position of agreeing to a verdict or causing a fellow juror to miss her plane trip for a job interview. We reject this argument based on our review of the record and relevant case law.

This court long ago stated that "a verdict cannot stand when the jury have been subjected to any statements or directions naturally tending to coerce or threaten them to agreement either way, or to agreement at all, unless it be clearly shown that no influence was thereby exerted." *Brown v. State,* 127 Wis. 193, 201, 106 N.W. 536 (1906). More recently, the United States Supreme Court stated, "Our review of petitioner's contention that the jury was improperly coerced requires that we consider the supplemental charge given by the trial court 'in its context and under all circumstances.' " *Lowenfield v. Phelps,* 484 U.S. 231, 237 (1988). Applying these tests to the present case, we do not believe that in its context and under all circumstances the trial court's

instruction to the jury naturally tended to coerce or threaten the jury to agreement.

Prior cases in which this court found that a trial court's instructions coerced a jury verdict involved situations where the jurors faced bodily discomfort and unhealthy conditions if they failed to reach a verdict quickly. *See Brown,* 127 Wis. 193 (Two holdout jurors were made seriously ill by cigar smoke of fellow jurors and were informed that they would be locked in the jury room for the night unless they reached a verdict quickly); *Mead v. City of Richland Center,* 237 Wis. 537, 297 N.W. 419 (1941) (Trial court intimated to the jury that the majority of the jurors were probably correct and that they would be kept in a cold room all night unless they all agreed to a verdict). The instant case does not involve such egregious circumstances.

■ Our review of the record shows that the trial court did not impose a time limit for a verdict, but told the jury it would have twenty minutes that night to decide what it wanted to do. The jury was informed that it would have time the following day to resume deliberations and the trial court told the jury that deliberations could begin at 7:30 a.m. to accommodate the one juror's travel plans. The trial court's instruction to the jury must be viewed in light of the fact that the foreperson informed the trial court that, "We're very close to a verdict." There was no indication that the jury was deadlocked or that there were any holdout jurors. When the jury returned after twenty-five minutes, the foreperson stated, "Your Honor, we were very close. We have reached a unanimous decision." Further, the trial court instructed the jury not to do anything impetuous. In its context and under all circumstances, the trial court's

instruction to the jury did not naturally tend to coerce a verdict.

■

The defendant asserts that the fact that the jury returned with a verdict within twenty-five minutes of resuming deliberations is evidence of the coercive effect of the trial court's instruction to the jury. We disagree. The jury informed the trial court that they were very close to a verdict. We cannot draw an inference of coercion from the fact that the jury returned with a verdict shortly after receiving a supplemental instruction. *See United States v. Dawkins,* 562 F.2d 567, 570 (8th Cir. 1977). Further, defense counsel's failure to object to the trial court's instruction to the jury, indicates that the potential for coercion was not apparent at the time.[1] *Lowenfield,* 484 U.S. at 240.

■

Important in our conclusion that the guilty verdict was not the product of jury coercion is the fact that the jury was polled right after the announcement of the verdict and all of the jurors individually announced their vote of guilty. In *State v. Wojtalewicz,* 127 Wis. 2d 344, 348, 379 N.W.2d 338 (Ct. App. 1985), the court described that the purpose of polling the jury is to test the uncoerced unanimity of the verdict by requiring each juror to answer for himself or herself, thus creating individual responsibility, eliminating any uncertainty as to the announced verdict. Polling the jury allows jurors an opportunity to change their minds about a verdict to which they have agreed in the jury room and permits inquiry into the unanimity of the verdict. The polling of the jury in this case adds further support to our conclu-

---

[1] We need not decide whether the defendant waived her right to raise this issue by failing to object to the instruction because we decide the issue against the defendant anyway.

sion that the guilty verdict was not the product of coercion.

In a case similar to the instant case, the court of appeals rejected the argument that a juror's concern about a business commitment the next day caused a likelihood that the verdict was coerced. *State v. Edelburg*, 129 Wis. 2d 394, 400, 384 N.W.2d 724 (Ct. App. 1986). The *Edelburg* court stated:

> All jury trials involve the possibility of a juror agreeing to a majority viewpoint for reasons extraneous to the facts of the case. Merely telling a juror that her jury duties are primary does not assure that the juror will not agree to a verdict out of personal concerns. The trial judge could do nothing about the business commitment, nor the juror's private reaction to the commitment. No one can know whether a juror has compromised his or her oath unless the juror reveals that fact. Here, the judge did what he could—he gave an extra hour for deliberation. We conclude that there was no coercion sufficient to deny Edelburg a fair trial.

The above quote is applicable to the present case. There is no evidence that any juror was coerced into a guilty verdict. The jury was polled and each individual juror stated in open court that he or she found the defendant guilty.

We also find persuasive the fact that the evidence against the defendant was very strong. The defendant made a confession and there was substantial other evidence against the defendant. The existence of this strong evidence makes a coerced guilty verdict very unlikely.

It no doubt would have been preferable for the trial court not to inform the jury that he was giving them

twenty minutes to make a decision on what they wanted to do. Preferably the trial court should have allowed the jury to return to deliberations and called them back twenty minutes later to see how they were doing. However, for the above stated reasons we do not think that the trial court's instruction in its context and under the totality of the circumstances tended to coerce the jury verdict. We conclude that the trial court did not improperly pressure the jury into a verdict.

## II.

The second issue is whether the trial court erred by failing to make historical findings of fact on the record in support of its denial of the defendant's motion to suppress an incriminating statement she gave to the police shortly after her arrest. The defendant argues that an appellate court cannot review the trial court's denial of her suppression motion because the trial court failed to place historical findings of fact on the record to support its denial of the suppression motion. Specifically, the defendant contends that the trial court should have made a finding of fact on the record as to whether the police made promises to her which encouraged her to make an incriminating statement. We conclude that the trial court made appropriate findings of fact on the record. We affirm the court of appeals.

At the time of her arrest, the defendant made an initial statement to Detective Murphy indicating that she was not involved in the attempt on her husband's life. At approximately 10:00 a.m. that same morning, Detective Barber took a second statement from the defendant in which she implicated herself in the crime. The defendant moved to suppress her second statement on the ground that it was not voluntary because it was the result of excessive promises made to her by the

police. At the suppression hearing, the defendant testified that she gave the incriminating statement because she wanted to go home to be with her children who were home alone. The children at home were ages fifteen and six. The defendant testified that Detective Barber promised her that she could go home to be with her children if she gave the statement. The defendant further testified that Detective Barber told her that he would not tell anyone about the statement and the statement would be "sealed." Detectives Barber and Murphy both testified that no promises were made to the defendant. The trial court denied the defendant's suppression motion.

This court will not upset a trial court's determination that a confession was voluntary unless it appears that the finding was clearly erroneous. Section (Rule) 805.17(2), Stats. Furthermore, as to the credibility of disputed testimony in relation to historical or evidentiary facts, this court will not substitute its judgment for that of the trial court. *Turner v. State,* 76 Wis. 2d 1, 18, 250 N.W.2d 706 (1977). The trial court did not make a specific finding as to the defendant's claim that promises were made to her. Thus, it is necessary for this court to independently review the record. *Id.,* 76 Wis. 2d at 18–19.

Our review of the record indicates that in issuing its decision the trial court identified the dispositive issue regarding the voluntariness of the statement: "What is in dispute at this particular critical juncture is the inducement that was involved." The trial court summarized with great care the testimony of all witnesses and then stated:

> This does not include everything that was stated that was either corroborative or in dispute by the parties but highlights those differences which are I

671

think critical, which make up the substance of this hearing. It is my view that the State has met the burden of establishing by the proof required that, one, the statements were made, that is, the Miranda statements and warnings were given properly, completely and timely; further that the statements made were knowingly made, understandingly made, *freely made.*

The defendant indicated that the conditions under which she gave it, while subject to special and obvious concerns, being upset for any number of reasons because of the state of her children, because of the injuries that her husband sustained, because of the charges that were being made against her, because of the lack of sleep she nevertheless was treated, she acknowledged, most hospitably . . . and there is no indication that she was under any physical condition that would be tantamount to pressure against her for making the statement. (Emphasis added.)

The trial court also stated that "the State has not violated any of the defendant's constitutional rights in taking the statement. . . ."

■■■■

Implicit in the finding that the statement was freely made is the finding that promises were not made to coerce the defendant into making the statement. It is clear from the record that the trial court weighed the credibility of all the witnesses. A trial court is not required to recite "magic words" to set forth its findings of fact. *Monson v. Madison Family Institute,* 162 Wis. 2d 212, 215 n.3, 470 N.W.2d 853 (1991). An implicit finding of fact is sufficient when the facts of record support the decision of the trial court. *Schneller v. St. Mary's Hospital,* 162 Wis. 2d 296, 311, 470 N.W.2d 873 (1991). The trial court's finding that "the statements

were knowingly made, understandingly made, freely made" is consistent with finding that promises were not made to the defendant.

When a trial court does not expressly make a finding necessary to support its legal conclusion, an appellate court can assume that the trial court made the finding in the way that supports its decision. *State v. Wilks*, 117 Wis. 2d 495, 503, 345 N.W.2d 498 (Ct. App. 1984), *aff'd* 121 Wis. 2d 93, 358 N.W.2d 273 (1984). Where it is clear under applicable law that the trial court would have granted the relief sought by the defendant had it believed the defendant's testimony, its failure to grant the relief is tantamount to an express finding against the credibility of the defendant. *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983).

In the instant case, the trial court was required to suppress the defendant's statement if it found that the statement was coerced, or the product of improper pressures exercised by the police. *State v. Hunt*, 53 Wis. 2d 734, 740, 193 N.W.2d 858 (1972); *State v. Clappes*, 136 Wis. 2d 222, 235–36, 401 N.W.2d 759 (1987). The police promises alleged in this case would amount to improper police pressure making the statement involuntary. *Clappes*, 136 Wis. 2d at 239. The fact that the trial court expressly found the defendant's statement to be voluntary and denied the defendant's suppression motion indicates that it did not find the defendant's assertions of police promises credible.

We conclude that the trial court made proper findings of fact on the record to support denial of the defendant's suppression motion. The trial court's findings

were not against the great weight and clear preponderance of the evidence. We affirm.

## III.

The third issue concerns whether the trial court committed reversible error by failing to allow the defendant to effectively cross-examine Detective Barber. At trial, defense counsel sought to impeach Detective Barber by eliciting answers on cross-examination that would contradict his earlier testimony at the suppression hearing the previous day. The prosecutor objected to the form of the cross-examination. The trial court sustained the objection. The basis of the successful objection was that defense counsel use a question-and-answer format in impeaching Detective Barber regarding his prior statements. The trial court's decision to require this form of cross-examination effectively prevented cross-examination on these points because the court reporter could not prepare a written transcript of the suppression hearing testimony and the trial court refused to require the court reporter to orally read the prior testimony from the suppression hearing.[2]

The defendant argues that the trial court's ruling was contrary to sec. 906.13, Stats.,[3] and prevented her from effectively cross-examining Detective Barber in

---

[2] The trial court informed the defense counsel that the court reporters were too busy and shorthanded to prepare a transcript of the suppression hearing, but that defense counsel could hire someone to prepare a copy for him.

[3] Section (Rule) 906.13(1), Stats., provides:

> In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown or its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel upon the completion of that part of the examination.

violation of the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution.[4] We conclude that the trial court did not erroneously exercise its discretion by limiting the cross-examination of Detective Barber and that the defendant's constitutional rights were not violated. We affirm the court of appeals.

Specifically, defense counsel wanted to impeach Detective Barber on two points. First, defense counsel wanted to show that Detective Barber's testimony was inconsistent regarding when the defendant told him that she was sorry she had gotten other people involved in her mess. At trial, Detective Barber testified that this statement occurred in the hallway of the city jail after the defendant had motioned for Detective Barber to come over by her and before Detective Barber took the defendant to a booking room where she gave her confession. Defense counsel wanted to show that at the suppression

---

[4] The Sixth Amendment to the United States Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

Article I, Section 7 of the Wisconsin Constitution provides:

In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

675

hearing Detective Barber testified that the statement occurred in the booking room where the confession was made.

Second, defense counsel wanted to show that Detective Barber's testimony was inconsistent regarding when he had the defendant write the time on the first page of her incriminating statement. At trial, Detective Barber testified that he had the defendant write the time on the first page of the statement after he had completed the interview. Defense counsel wanted to show that at the suppression hearing Detective Barber testified that the defendant wrote the time on the first page of the statement after he had completed writing the first page.

■■

The trial court's ruling was consistent with Rule 906.13(1). That rule makes it unnecessary for the cross-examiner to first show or disclose a prior statement to the witness before questioning the witness about the statement. However, the rule also requires that "on request the same shall be shown or disclosed to opposing counsel upon the completion of that part of the examination." In the instant case, defense counsel did not have a copy of the transcript containing Detective Barber's prior testimony, therefore, there was nothing for defense counsel to show opposing counsel upon a request. Defense counsel did not comply with the requirements of Rule 906.13(1) and was properly precluded from questioning Detective Barber concerning his prior testimony at the suppression hearing.

■■

Without a copy of Detective Barber's prior testimony there was no way for the trial court or opposing counsel to know whether defense counsel's recollection of the testimony was accurate. Rule 906.13(1) was not intended to take away the trial court's discretion to man-

age the trial in a way designed to promote accuracy and fairness. *United States v. Marks,* 816 F.2d 1207, 1211 (7th Cir. 1987) (interpreting Federal Rule 613(a) which is the federal counterpart to Wisconsin Rule 906.13(1)).

Every defendant in a criminal case has a constitutional right to confront his or her accusers. The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Similarly, Article I, Section 7, of the Wisconsin Constitution provides: "In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face."

The crux of the right to confrontation is the opportunity for effective cross-examination. *State v. Jenkins,* 168 Wis. 2d 175, 198, 483 N.W.2d 262 (Ct. App. 1992). There is no right, however, to a cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Id.* The scope of cross-examination allowed for impeachment purposes is within the trial court's discretion. *Rogers v. State,* 93 Wis. 2d 682, 689, 287 N.W.2d 774 (1980); *Chapin v. State,* 78 Wis. 2d 346, 352, 254 N.W.2d 286 (1977). The trial court has discretion to exclude relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Section (Rule) 904.03, Stats.; *Chapin,* 78 Wis. 2d at 353–54; *State v. Pulizzano,* 155 Wis. 2d 633, 646, 456 N.W.2d 325 (1990).

The trial court in this case did not specifically refer to Rule 904.03, but its decision reflected a determination that any probative value of the evidence was substan-

tially outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The trial court stated:

> We are not going to dabble in what I consider to be trivia of this nature . . .. You have had an ample opportunity to explore everything that is really relevant and pertinent to the nature and contents of the interview that was conducted.
>
> . . ..
>
> The witness has testified five or six times on the subject of how the time appears on the statement. [Defense counsel] has made a major issue out of this proposition, contending directly or indirectly that the testimony of the witness as to how that time got on there varies.
> Now I think that this, frankly, is such trivia that whether he testifies one way or another way makes absolutely no difference . . ..

The trial court allowed defense counsel to impeach Detective Barber regarding when the defendant made her statement about getting others involved in her mess, as is shown by the following cross-examination testimony of Detective Barber:

Q: Monday did you testify under oath in a hearing?

A: Yes, I did.

Q: And don't you remember that you said all [the defendant] said out in the hall was, I want to talk, and then you took her to the room and there she said, I'm sorry, I got other people into this mess?

A: I might have said that, sir, but I believe you're incorrect. I know that she said that she was sorry, that she had gotten other peo-

ple involved in her mess. As far as saying it out in the hallway or as we were going to the room, I know that she said it.

Furthermore, error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected and the substance of the evidence was made known to the judge by offer or was apparent from the context within which the questions were asked. Section (Rule) 901.03(1)(b), Stats. Defense counsel never made an adequate offer of proof to inform the trial court of the materiality and necessity of the evidence he wished to elicit. While the right of the accused to be confronted by his accusers is guaranteed by the constitution, the cross-examination of an adverse witness may be limited by considerations of relevance and materiality. *Chapin,* 78 Wis. 2d at 353. Defense counsel did not make an adequate offer of proof showing the materiality of the evidence; therefore, we cannot find that the trial court erroneously exercised its discretion in limiting the cross-examination on the basis of undue delay, waste of time, or needless presentation of cumulative evidence.

We conclude that the trial court properly exercised its discretion in limiting the cross-examination of Detective Barber.

## IV.

The fourth issue is whether the trial court improperly denied the defendant's motion for a continuance. On the day set for jury trial, defense counsel moved for an adjournment based on a claim that the defendant was not in proper physical condition to go to trial. The defendant's motion for a continuance was denied. We conclude, as did the court of appeals, that the trial court

did not erroneously exercise its discretion in denying the defendant's motion for a continuance. We affirm.

The defendant argued that due to conditions at the county jail and house of corrections where she was being kept prior to trial her physical condition had deteriorated to a point where she could not assist her attorney in preparation for trial. Four days prior to trial the defendant was transferred from the county jail to the house of corrections. This transfer took place at 3:00 a.m. The defendant also argues that she got a minimal amount of sleep on the days immediately prior to her trial because younger inmates at the house of corrections played music and watched television all night preventing her from sleeping. The defendant further alleges that for nine days prior to her move to the house of corrections she was unable to take a shower because of a plumbing breakdown at the county jail.

The trial court's ruling on a motion for continuance will not be set aside unless we find that the trial court erroneously exercised its discretion. *State v. Wollman,* 86 Wis. 2d 459, 468, 273 N.W.2d 225 (1979); *State v. Anastas,* 107 Wis. 2d 270, 272, 320 N.W.2d 15 (Ct. App. 1982). A denial of a continuance potentially implicates the Sixth Amendment right to counsel and the Fourteenth Amendment right to due process of law. *Wollman,* 86 Wis. 2d at 468. On review, we must balance the defendant's right to adequate representation by counsel against the public interest in the prompt and efficient administration of justice. *Id.*

In this case, the record clearly reflects that the trial court carefully considered the defendant's physical condition and balanced that against the community and court's interest in the efficient administration of justice.

680

The trial court indicated its willingness to hear medical testimony in support of the defendant's claim that she was not able to aid in her defense. No medical testimony was presented. The defendant testified on her own behalf as to her physical condition. The record reflects that the defendant was able to understand questions and provide appropriate answers. Defense counsel admitted that he had met with the defendant and fully planned her defense prior to the trial date. The trial court noted that its calendar was very full and continuances could only be granted when substantial cause was shown. Also important in this case is the fact that the defendant was previously granted a continuance.

The fact that the defendant had a lack of sleep and was uncomfortable was not a sufficient reason for adjourning the trial. We conclude that the trial court properly exercised its discretion in denying the defendant's request for a continuance.

V.

The final issue is whether the trial court erred in pronouncing sentence by failing to place sufficient legal and factual reasons on the record to support its sentence of the maximum twenty years in prison for the defendant. We conclude that the trial court properly exercised its discretion in sentencing and placed sufficient reasons on the record to support its sentence. We affirm the court of appeals.

Sentencing is left to the discretion of the trial court, and appellate review is limited to determining whether there was an erroneous exercise of discretion. *State v. Harris,* 119 Wis. 2d 612, 622, 350 N.W.2d 633 (1984). We recognize a "strong public policy against interference with the sentencing discretion of the trial court and

sentences are afforded the presumption that the trial court acted reasonably." *Id.* This court is reluctant to interfere with a trial court's sentence because the trial court has a great advantage in considering the relevant factors and the demeanor of the defendant. *Id.* The defendant must show some unreasonable or unjustifiable basis in the record for the sentence imposed. *Id.,* 119 Wis. 2d at 622-23.

The trial court must articulate the basis for the sentence imposed on the facts of the record. *Id.,* 119 Wis. 2d at 623. There should be evidence in the record that discretion was in fact exercised. *State v. Petrone,* 161 Wis. 2d 530, 563, 468 N.W.2d 676 (1991).

The primary factors the trial court must consider in imposing sentence are: (1) the gravity of the offense, (2) the character and rehabilitative needs of the offender, and (3) the need for protection of the public. *State v. Sarabia,* 118 Wis. 2d 655, 673, 348 N.W.2d 527 (1984). As part of these primary factors the trial court may consider: the vicious and aggravated nature of the crime; the past record of criminal offenses; any history of undesirable behavior patterns; the defendant's personality, character and social traits; the results of a presentence investigation; the degree of the defendant's culpability; the defendant's demeanor at trial; the defendant's age, educational background and employment record; the defendant's remorse, repentance, and cooperativeness; the defendant's need for rehabilitative control; the right of the public; and the length of pretrial detention. *State v. Borrell,* 167 Wis. 2d 749, 773-74, 482 N.W.2d 883 (1992).

The defendant asks this court to adopt a new rule of law requiring a sentencing court to specifically address on the record each of the factors listed above in addition to the three primary sentencing factors. We refuse to adopt such a rule. The trial court is in the best position to determine the relevant factors in each particular case. We believe the better course is to allow the trial court to articulate a basis for the sentence on the record and then require the defendant to attack that basis by showing it to be unreasonable or unjustifiable.

We are satisfied that, on the basis of this record, the trial court properly exercised its discretion in sentencing the defendant. The trial court considered the three primary sentencing factors and noted them on the record. The trial court also considered many of the additional factors set forth above. The trial court noted that the defendant was a woman of "obvious talents" and a "most charming person." The trial court described the defendant as "very intelligent." The trial court also noted that the defendant had no prior criminal record. Balanced against this was the fact that the defendant was able to corrupt three young men to commit a serious crime. The trial court indicated that the basis for the length of the sentence was the nature of the offense.

There is nothing in the record to suggest that the trial court's sentencing decision was unreasonable or unjustifiable. We conclude that the trial court properly exercised its discretion in sentencing the defendant.

*By the Court.*—The decision of the court of appeals is affirmed.