Veronica F. ECHOLS, Petitioner,

v.

Kristine KRENKE, Warden, Respondent.

No. 94–C–272.

United States District Court,
E.D. Wisconsin.

Dec. 23, 1994.

Veronica Echols, pro se.

William C. Wolford, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for respondent.

*OPINION AND ORDER*

CURRAN, District Judge.

Veronica F. Echols, a Wisconsin state prisoner confined at the Taycheedah Correction-

al Institution, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. She raises four grounds in her petition which she claims renders her incarceration unconstitutional. The first two grounds are somewhat intertwined. She alleges that the trial court improperly denied a recusal motion and that the recusal motion itself resulted in the court's subsequent bias against the Defendant. She next alleges that the trial court coerced the jury into reaching a verdict and finally claims that the sentence was excessive. The Wisconsin Supreme Court summarized the underlying offense and disposition as follows:

Sometime prior to August 14, 1989, the defendant, Veronica Echols, conspired with her son, Terrence Echols a/k/a Terrence Murray, and his friend, Marcus D. Laster, to commit the murder of her husband, Melvin Echols. The defendant offered Marcus Laster $2,500 to kill her husband so she could reap the benefits of his life insurance policy and escape from an alleged abusive relationship.

On the evening of August 14, 1989, Terrence Murray, Marcus Laster and another juvenile went to the home of Melvin Echols. After speaking briefly with Melvin Echols who was sitting in the living room, the three boys went to the basement or the back porch of the house. Shortly thereafter, Marcus Laster re-entered the living room and shot Melvin Echols three times. Melvin Echols survived the shooting and testified that Marcus Laster attempted to shoot him a fourth time, but the gun misfired and Laster fled the scene. The defendant, Veronica Echols, was arrested on August 15, 1989, and charged with party to a crime of attempted first degree intentional homicide.

A jury found the defendant guilty of the crime charged and Circuit Judge, Robert W. Landry, entered a judgment of conviction. Judge Landry sentenced the defendant to the maximum twenty years in prison. Judge Landry denied the defendant's post-conviction motions. The court of appeals affirmed the judgment of conviction and the circuit court order denying the defendant's post-conviction motions.

*State v. Echols,* 175 Wis.2d 653, 664, 499 N.W.2d 631, 633, *cert. denied,* —— U.S. ——, 114 S.Ct. 246, 126 L.Ed.2d 199 (1993). After a thorough review of the record and pleadings, the court finds that the Petitioner has failed to present any claim meriting habeas corpus relief. Accordingly, the petition will be denied.

### RECUSAL AND JUDICIAL BIAS

■ The Honorable Robert W. Landry presided over the trial. At some point before the trial began, Echols' counsel made an oral motion that Judge Landry recuse himself based on statements Judge Landry made at a regular meeting of the Milwaukee Felony Judges. The newly appointed police chief was present at the meeting and Judge Landry made comments indicating that police officers were more credible witnesses than they had been in the past. Defense counsel interpreted this as meaning that any challenge to the credibility of police officers would be unsuccessful. In responding to the motion, Judge Landry noted that as presiding judge of the Felony Division, he conducted the meetings on the second and fourth Thursday of the month and that the discussions had been open ones in which there was a free exchange of thoughts, impressions and views on many issues, including sentencing policies, proposed changes in the law and the better administration of the justice system. The comments concerning the police were offered because of the presence of the new chief. Judge Landry refused to recuse himself and Echols appealed this decision to the Wisconsin Court of Appeals. The Appellate Court found as follows, "With respect to the trial court's statement at the Milwaukee County Felony Judges' meeting, we note that this statement can clearly be characterized as an observation of fact, i.e., an improvement in the performance of police officers, made from the prospective of a professional vantage point, rather than a voluntary admission of a general and improper bias toward police officers." Echols did not however, appeal this issue to the Wisconsin Supreme Court and has failed to show either cause or prejudice from the procedural default. The court accordingly finds that she has waived this issue.

■ The Petitioner has further failed to demonstrate that judicial prejudice against her counsel infected the trial to the extent that her constitutional rights were violated. In her reply brief, she raises the issue of the cross examination of Leslie Barber, one of the detectives who interviewed her and ultimately took the statement which constituted her confession. During cross examination defense counsel attempted to impeach Detective Barber with statements he made a few days earlier at the suppression hearing regarding the precise place where the Defendant was when she told Detective Barber that she was sorry she had gotten other people involved in her mess and the timing involving when the detective had Ms. Echols write the time on the statement which she gave. The trial court limited the impeachment testimony because the transcript of the suppression hearing was not available. As the Supreme Court pointed out, defense counsel failed to proffer a showing of materiality and the limitation of cross examination for impeachment purposes did not rise to the level of a violation of the Petitioner's confrontation rights under the Sixth Amendment to the United States Constitution.

### COERCED VERDICT

■ At approximately 1:30 p.m. on Friday, March 30, 1990, the jury began its deliberations. At approximately 5:00 o'clock the court summoned the jury and asked the foreperson whether the jury had reached a verdict. The foreman replied, "Not finally, sir. We're very close to a verdict." Judge Landry announced that the matter would be adjourned until the next morning at 9:00 o'clock, at which time the jury could continue with its deliberations. One of the jurors informed the court that she had a nonrefundable airline ticket for 10:25 the following morning for a job interview. The court suggested that the jury could convene at 7:30 in the morning followed by a general discussion in which several suggestions were offered. Finally the court stated:

> All right. Now I'm going to ask you to do what you choose to do. I want to make it very clear, I want to make it very positive and clear that I'm going to let you go back into the jury room and decide what you want to do. Now, I'm going to give you twenty minutes time in which to do this. I don't want you to use that twenty minutes to do anything impetuous just for the purposes of avoiding any further coming back tomorrow or taking a verdict in some other fashion.

> If you can reach a verdict conscientiously and be satisfied that each one of you is operating in—consistent with the evidence, the court's instructions and your own conscience, I'll permit you to do that, but I want to make it very clear to you that I don't want anybody to feel that this is in any way forcing you into an impetuous decision that is not your free and voluntary choice with all the deliberation that the importance of this case deserves. Your excused.

Twenty-five minutes later the jury returned and the foreman announced, "Your Honor, we were very close. We have reached a unanimous decision." The Petitioner argues that the court's supplemental instruction coerced the verdict. In considering whether the jury was improperly coerced, the court must consider the supplemental charge given by the trial court "in its context" and "under all the circumstances." *Lowenfield v. Phelps*, 484 U.S. 231, 237, 108 S.Ct. 546, 550, 98 L.Ed.2d 568 (1988), quoting *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965) (per curiam). Under all the circumstances the court must find that the trial court's supplemental charge in no way tended to coerce the verdict. Prior to the instruction the foreman told the court that the jury was very close to a verdict. The court gave the jury twenty minutes to decide what they wanted to do. He made it clear that the twenty minutes was not a deadline for reaching a verdict. He stressed that if they did reach a verdict they were to follow their own conscience consistent with the evidence and the court's instruction. He stressed that they were not to feel forced into making an impetuous decision and before they were dismissed the jury was polled. The Petitioner's argument has no merit.

*EXCESSIVE SENTENCE*

 Finally, the Petitioner maintains that the imposition of the maximum sentence "was grossly inappropriate to the character of this Petitioner who had no prior record." She further complains that the court did not address societal needs and penalized her for having testified on her own behalf. This court, of course, is only concerned with whether the sentence offends the Constitution. The Wisconsin Supreme Court found that the trial court did not exceed its broad discretion in sentencing Ms. Echols to the maximum term, and the court agrees that no error of constitutional dimension occurred. On the record, the court noted that Marcus Lasker received a seven-year sentence as the result of his shooting of Melvin Echols and that he was nineteen years of age at the time of the shooting. He noted that it was the act of Mrs. Echols which "precipitated all of this." She induced her son Terrence, who received a forty-two month sentence, to participate in the crime. She "induced her son to contact his friend and discuss the possibility, the means of killing her husband Melvin Echols, who was living in the same home, enjoying the same bed, enjoying the same table, enjoying the same home together as they had for fourteen years, surreptitiously, why, [sic] she was scheming to kill her husband...." On the record, the court noted that Marcus Lasker had no previous record as a juvenile, rejected the first offer but later agreed to accept $2500, which Mrs. Echols would pay out of her insurance proceeds. Even though Melvin Echols survived the attempted murder, the horror of the experience is one that will remain with him, along with the bullet that remains in his back. The court further noted that Mrs. Echols did not appear to show remorse after having corrupted "these young men to do something that is probably most foul, assassination. Most foul." There is no suggestion that Judge Landry took an impermissible factor such as race, religion or political belief into account in arriving at his decision. *Sandoval v. Acevedo,* 996 F.2d 145, 151 (7th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 307, 126 L.Ed.2d 255 (1993). Under the circumstances, the court must find that the twenty year sentence does not offend the Constitution. Accordingly,

IT IS ORDERED that the petition of Veronica Echols for a writ of habeas corpus be and hereby IS DENIED. The clerk is directed to enter final judgment denying the petition.

Done and Ordered.