**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 8, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1865-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2020CF60**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

KIMBERLY A. HOWELL,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Manitowoc County: MARK R. ROHRER, Judge. *Affirmed.*

¶1 NEUBAUER, J.[1] Kimberly A. Howell appeals from a judgment of conviction and an order denying her postconviction motion. Howell contends that

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

the circuit court erroneously exercised its discretion at sentencing by imposing a condition that, during the term of her probation, she may not be a guardian of any child. She also contends the condition is unconstitutional and unreasonable. Howell argues that the court erred by denying her motion to stay pending appeal and her postconviction motion, both of which sought to modify the condition. We reject these challenges and affirm.

## BACKGROUND

¶2 On January 22, 2020, Howell was charged with three counts of causing mental harm to a child in violation of WIS. STAT. § 948.04(1) and two counts of physical abuse of a child, intentional causation of bodily harm, in violation of WIS. STAT. § 948.03(2)(a)-(b).

¶3 Howell was the guardian of five children, ages one to eleven. One of the children is Howell's grandson, J.R., who is autistic.

¶4 The Manitowoc County Department of Human Services (County) received an anonymous tip that "Child A," subsequently referred to as S.G., who was eleven years old, was being neglected by her guardians, Howell and her husband.[2] S.G. is not one of Howell's biological grandchildren.

¶5 The criminal complaint details the facts supporting the charges, which are based on an investigation involving interviews of Howell and three of the children, including S.G., by a detective and a child protection services social worker. The allegations of mistreatment made by S.G., which will be discussed

---

[2] Howell's husband is not the subject of this criminal case.

further below, were extensive and consistent in several respects with the interviews with the two other children. Howell denied that S.G. was being abused. After she was charged, the five children were removed from her home.

¶6      Howell was subsequently charged in a separate case with bail jumping arising out of an incident where she drove by two of the children at school and shouted at them. Witnesses to the event reported that the children were frightened and went back into the school.

¶7      Pursuant to a plea agreement, the charges were modified with an amended information, and Howell pled no contest to two counts of child neglect in violation of WIS. STAT. § 948.21(2)[3] and one count of disorderly conduct, domestic abuse, in violation of WIS. STAT. §§ 947.01(1), 939.51(3)(b), and 968.075(1)(a). One count of causing mental harm to a child in violation of WIS. STAT. § 948.04(1) and one count of physical abuse of a child in violation of WIS. STAT. § 948.03(2)(b) were dismissed and read in at sentencing. The bail jumping charges were also dismissed and read in for purposes of sentencing. The State agreed to recommend a withheld sentence and two years of probation. The State recommended as conditions of probation that Howell receive a mental health assessment, take parenting classes, and have no contact with S.G.

¶8      At the plea hearing, Howell's counsel noted that Howell disagreed with some of the facts in the complaint but agreed that there were sufficient facts

---

[3] The court confirmed with Howell that she understood the elements of the neglect crimes to which she pled, including that the State would have to show beyond a reasonable doubt that, as a person responsible for the welfare of the child, she negligently failed to provide necessary care so as to seriously endanger the physical, mental, or emotional health of S.G.

in the complaint that were substantially true and correct to establish a factual basis for Howell's plea.

¶9 At sentencing, Howell read a statement emphasizing how much she loved and cared for the children and recounting S.G.'s mental health and behavioral issues. During the plea colloquy, Howell had acknowledged receiving treatment for mental illness herself. She stated that she had become "stressed out" and did not know how to "deal" with S.G.'s behavior while also being responsible for four other children. Howell also said she had "lots of problems," including serious physical ailments. She acknowledged that she should have, but did not, seek "more help from the outside." She also said she should have come up with "better ways to discipline" S.G. and that she regretted some of the decisions she has made. However, she also stated that the allegations were "terribly … exaggerated," that the children were asked leading questions in the interviews, and she claimed the reporting of the interviews in the complaint was not accurate. Howell's counsel stated that Howell had given up the guardianship of the four children, but not that of her autistic grandson, J.R.

¶10 In a thorough sentencing decision, the circuit court considered the gravity of the offenses, Howell's character, and the need to protect the public. The court noted that S.G. had special needs and significant mental health and behavioral challenges, which Howell and her counsel detailed prior to sentencing. Nevertheless, the court found that Howell "involved herself in criminal activity" rather than seeking help.

¶11 The court acknowledged Howell's contention that the children's allegations were exaggerated but found multiple "consistent themes" between S.G.'s allegations and the accounts of the other two children who were

4

interviewed separately, which lent them credibility. For example, the court found credible the claims that Howell instructed the other children to strike S.G. One child reported that Howell sometimes "tell[s] us to hit [S.G.] in the stomach." This child reported that S.G. was hit, slapped, and punched. The other child reported that Howell beat S.G. and would tell the other children to beat S.G. The child "always listened" to Howell when she told him to beat S.G.

¶12     The court also identified consistency in the allegations that S.G. "was required to stand up for extended periods of time to the point where her legs" were about to give out but she was so frightened of being struck by Howell that she did not complain. S.G. reported that Howell required S.G. to do an extensive number of push-ups as a form of discipline. The other children confirmed that Howell required S.G. to do push-ups. Howell acknowledged that she disciplined S.G. by making her do push-ups until she "tells the truth." The court identified as problematic Howell's attempt to justify her treatment of S.G. as an effort to have her exercise.

¶13     The court recounted the allegations that Howell disciplined S.G. with a "rice diet"—limiting S.G. to two cups of rice three times a day. S.G. reported that she was "often hungry." The other children confirmed the "rice diet" and reported that S.G. was disciplined when she "stole" food. One child stated he believed S.G. stole food because she was hungry.

¶14     The court also noted that S.G., who was eleven years old, wore pull-ups at night and that when she had accidents, Howell would make her stay in "soiled pants." S.G., the other two children, and Howell confirmed that S.G. did not have a bed. S.G. reported that she sometimes was required to sleep on the cold bathroom floor, which one of the other children confirmed.

¶15    The court found the interviews set forth an "accurate pattern of a picture of what's going on"—that Howell had directed her "anger and frustration" at S.G., who "became a target of the abuse." After recounting the degrading treatment to which Howell had subjected S.G., the court stated that "no child should ever endure this type of behavior." The court noted that S.G. had lived through a "pretty hellacious situation" for an entire year. This time frame was also significant, given Howell's acknowledgement of the difficult behavioral issues she identified, because Howell undertook these measures rather than seeking help.

¶16    The court also highlighted two incidents in which Howell had not been honest with investigators when she denied allegations about her treatment of S.G. One incident involved cutting off S.G.'s ponytail as discipline, with which Howell initially denied any involvement. In the second incident, Howell "terrorized" two of her grandchildren after she relinquished custody by driving by their school and shouting at them. While Howell had downplayed her behavior to the police by denying any shouting and stating that the drive-by was an accident, the incident was witnessed by others. This factored into the court's effort to determine whether the children's allegations were exaggerated or Howell's denials were credible: in the court's view, "the credibility pendulum is starting to swing more and more and more towards the children, not in favor of Ms. Howell."

¶17    The circuit court also noted the positive aspects of Howell's character, crediting her for taking on the care of the five children, four of whom were grandchildren, likely without adequate financial resources. The court noted Howell's positive undertakings since the criminal complaint was filed, such as taking anger management and parenting classes.

¶18    Ultimately, the circuit court found that, regardless of her stated love, Howell engaged in "intolerable and unacceptable" behavior towards S.G.  The court also concluded that it was "troubling" that Howell "hasn't been willing to … come to grips with how far she took it and allowed it to go on."

¶19    The circuit court imposed and stayed jail sentences on the three charges and placed Howell on probation for two years.  The court also ordered, as a condition of probation, that Howell not serve as a guardian for any child during the term of her probation.  The court explained that Howell had struggled with a child with special needs and engaged in criminal behavior.  The court recognized the difficult situation presented with J.R., a child with autism, along with Howell's own health problems, which were difficult to handle.  The court found that, given what happened to the children under her care, protecting children supported this condition.

¶20    On March 15, 2021, Howell filed a motion with the circuit court to stay the condition that she not be allowed to serve as guardian to any child during the term of her probation.  Howell argued that the condition was improper because it would preclude her from opposing efforts by the County to terminate her guardianship of J.R. in a then-pending child in need of protection or services (CHIPS) proceeding.

¶21    The court held a hearing on Howell's motion on March 18, 2021.  After hearing argument from the parties, the court explained that its sentencing decision could not be influenced by what "may occur as a result" of the sentence.  The court also noted the broad discretion it had in setting terms of probation, which was to be used to "further the objective of rehabilitation and protect society and potential victims from future wrong doing."  The court ruled that the

guardianship condition was "reasonably related" to Howell's rehabilitation. The court reviewed the facts in the complaint upon which Howell's plea was based, which chronicled her mistreatment of S.G., and noted that J.R.'s autism was "not something very easy to manage, [individuals with autism] can become very difficult." The court also referred to Howell's own physical ailments and expressed sensitivity to not "set[ting] her up for potential failure by putting her in a situation where she has a difficult child that she's having to deal with—like she did with this other child—and here we go again." Based on these considerations, the court concluded that the guardianship condition "furthers the objective of rehabilitation of Ms. Howell, and protects society and potential victims from future wrong doing."

¶22 On May 11, 2021, Howell filed a notice of appeal. Six days later, Howell filed an emergency motion with this court seeking to stay her term of probation, or alternatively, to exempt J.R. from the condition prohibiting guardianship, pending appeal. As before the circuit court, Howell contended that the condition would provide the basis for a termination of her guardianship in the CHIPS proceeding. She repeated her argument that the condition violated her due process rights because none of the charges against Howell alleged that she had harmed J.R. She also pointed out that J.R. was in foster care, so the County controlled her contact with him. We denied the motion in an order dated June 22, 2021.

¶23 Howell subsequently moved to dismiss her appeal, which we granted, and filed a postconviction motion in the circuit court. In her motion, Howell argued the circuit court erred because the condition prohibiting her from acting as a guardian of any child was: (1) overly broad and unconstitutional; and (2) neither reasonable nor appropriate. The court denied the motion without a

hearing, referring back to the rationale set forth in its decision on the motion to stay.

¶24    Howell appeals.

## DISCUSSION

¶25    On appeal, Howell again argues the circuit court erred because the condition prohibiting her from acting as a guardian of any child was:  (1) overly broad and unconstitutional; and (2) neither reasonable nor appropriate.  She now adds that she was denied notice and an opportunity to challenge the condition.

¶26    "Sentencing is left to the discretion of the trial court, and appellate review is limited to determining whether there was an erroneous exercise of discretion."  *State v. Echols*, 175 Wis. 2d 653, 681, 499 N.W.2d 631 (1993). Wisconsin appellate courts recognize a "strong public policy against interference with the sentencing discretion of the trial court and sentences are afforded the presumption that the trial court acted reasonably."  *Id.* at 681-82 (citation omitted); *State v. Ziegler*, 2006 WI App 49, ¶22, 289 Wis. 2d 594, 712 N.W.2d 76 ("we afford a strong presumption of reasonability to the [circuit] court's sentencing determination because th[at] court is best suited to consider the relevant factors and demeanor of the convicted defendant").

¶27    "[T]o properly exercise its discretion, a circuit court must provide a rational and explainable basis for the sentence."  *State v. Stenzel*, 2004 WI App 181, ¶8, 276 Wis. 2d 224, 688 N.W.2d 20.  "The primary sentencing factors which a court must consider are the gravity of the offense, the character of the defendant, and the need to protect the public."  *Ziegler*, 289 Wis. 2d 594, ¶23.  "The weight to be given to each factor is within the discretion of the sentencing court."  *Id.*

¶28    The circuit court has broad discretion in setting conditions of both extended supervision and probation.  *State v. Miller*, 2005 WI App 114, ¶11, 283 Wis. 2d 465, 701 N.W.2d 47; WIS. STAT. § 973.01(5) (concerning extended supervision conditions); *State v. Brown*, 174 Wis. 2d 550, 553, 497 N.W.2d 463 (Ct. App. 1993); WIS. STAT. § 973.09(1)(a) (concerning probation conditions). For both types of supervision, the court is permitted to impose reasonable and appropriate conditions intended to rehabilitate the defendant and protect the community.  *Miller*, 283 Wis. 2d 465, ¶11; *Brown*, 174 Wis. 2d at 553-54. However, where a defendant challenges a condition of probation on the grounds that it is unconstitutional, we review the challenge de novo.  *State v. Oakley*, 2001 WI 103, ¶8, 245 Wis. 2d 447, 629 N.W.2d 200, *clarified on denial of reconsideration,* 2001 WI 123, 248 Wis. 2d 654, 635 N.W.2d 760.

### I.    The probation condition is constitutional.

¶29    Howell contends that WIS. STAT. § 48.023[4] creates a liberty interest protected by the Fourteenth Amendment[5] in the guardianship of her grandchild that was violated because she was not given notice or an opportunity to be heard before the circuit court imposed the condition.  We reject this challenge.

¶30    First, Howell fails to meaningfully develop her argument that she has a liberty interest in guardianship.  She cites no law for the proposition that the Fourteenth Amendment protects one's status as a court-appointed guardian, and simply citing the guardianship statute is wholly insufficient.  "We do not decide

___

[4] Howell cites WIS. STAT. § 48.23 in her brief but quotes from WIS. STAT. § 48.023.  We assume the reference to § 48.23 was an error.

[5] U.S. CONST. amend. XIV.

the validity of constitutional claims that are broadly stated but not specifically argued." ***State v. Nienhardt***, 196 Wis. 2d 161, 168, 537 N.W.2d 123 (Ct. App. 1995); *see also* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments).[6]

¶31 We also reject Howell's contention that she was entitled to notice of the probation condition before the court imposed it because the condition was not included in the parties' plea agreement. Again, Howell fails to provide any authority for the notion that the circuit court was limited to the terms of the plea agreement, which clearly it was not. *See* ***State v. McQuay***, 154 Wis. 2d 116, 128, 452 N.W.2d 377 (1990) ("It is well established, however, that the sentencing court is not in any way bound by or controlled by a plea agreement between the defendant and the state."). Indeed, the court confirmed with Howell at the plea hearing that she understood that it was not bound by the plea agreement.

¶32 Likewise, we reject Howell's contention that she was denied notice and an opportunity to be heard. Unlike with a maximum sentence or a penalty enhancer, there is no statutory requirement that an accused be advised of potential probation terms or conditions. Indeed, such a requirement would be inconsistent with the broad discretion accorded to circuit courts to craft conditions at sentencing that will further the goals of rehabilitation and protection of the community. Moreover, we note that Howell was able to raise her objection to the condition twice, in the motion to stay and the postconviction motion. The circuit court held a hearing on her motion to stay and thoroughly explained why her

---

[6] While both Howell and the State request publication of this decision, neither adequately addresses the criteria for doing so, and more importantly, neither sufficiently develops the issue of whether the condition infringes on a constitutional liberty interest to warrant publication.

objection to the condition did not carry the day. The court then referred to its explanation in denying Howell's postconviction motion.

¶33 Even if Howell could establish a constitutional right is at issue, her challenge fails. A defendant has no right to probation, which "is a privilege extended to a [defendant] by the grace of the state." *State v. Schwind*, 2019 WI 48, ¶25, 386 Wis. 2d 526, 926 N.W.2d 742 (citation omitted). As such, probation conditions are not subject to strict scrutiny analysis. *See Oakley,* 245 Wis. 2d 447, ¶16 n.23. Conditions of probation may infringe upon constitutional rights as long as they are not overly broad and are reasonably related to the defendant's rehabilitation. *State v. Rowan*, 2012 WI 60, ¶¶4, 10, 341 Wis. 2d 281, 814 N.W.2d 854; *Nienhardt*, 196 Wis. 2d at 168-69.

¶34 The condition prohibiting Howell from serving as guardian during her time on probation is not overly broad. First, at the time of sentencing, the circuit court had before it multiple accounts detailing a year-long course of abusive and neglectful behavior towards S.G. Some of the conduct relayed in these accounts—which Howell agreed provided an adequate factual basis for her plea—is shocking. Among other things, Howell: (1) instructed the other children under her care to slap, hit, and punch S.G.; (2) punished S.G. by forcing her to stand up for extended periods of time to the point where her legs were about to give out, (3) deprived S.G. of food other than rice, often leaving her hungry; and (4) deprived her of a bed and forced her to wear soiled clothing. The circuit court was rightly concerned about Howell continuing to serve as a guardian over children given this behavior.

¶35 Second, while Howell repeatedly argues that her behavior only involved S.G., this contention itself evidences great indifference to the impact that

the exposure to, and involvement in, the mistreatment of S.G. undoubtedly has had on the other children. Moreover, S.G. was not the only child to be the target of Howell's criminal behavior. Her plea agreement allowed the circuit court to consider a dismissed count of causing mental harm to a seven-year-old child under her guardianship. The circuit court's concern that Howell might behave abusively or neglectfully towards other children under her care, including J.R., was not unfounded.

¶36 Third, Howell acknowledged having "lots of problems myself," and the circuit court noted that she had taken parenting classes and steps to address anger management issues. Given Howell's acknowledged unlawful behavior towards S.G. and at least one other child under her care and her own physical and mental health issues, the circuit court's imposition of a no-guardianship condition was not overly broad.[7]

¶37 In addition, the condition bears a reasonable relationship to Howell's rehabilitation in light of the conduct underlying her plea. By relieving Howell of the burdens of serving as a guardian during her two years on probation, the condition gave Howell the time and space to attend court-ordered parenting classes and focus on improving her own physical and mental health so that she is better able to conform her conduct to the law. *See Oakley*, 245 Wis. 2d 447, ¶21.

## II. The circuit court did not erroneously exercise its discretion in imposing the probation condition.

---

[7] We also note that the no-contact order imposed by the circuit court applied only to S.G. and thus did not prohibit all contact between Howell and J.R. or the other children over which she formerly served as guardian.

¶38    Finally, Howell contends that the probation condition was not reasonable and appropriate. *See* WIS. STAT. § 973.09(1)(a). Focusing specifically on J.R., Howell contends that the circuit court erred in imposing the prohibition because J.R. was not a victim of any of the offenses to which she pled no contest and because J.R. was not in her custody at the time of sentencing.

¶39    Our task in reviewing the reasonableness and appropriateness of the condition is relatively narrow; we focus on whether the condition "serve[s] the objectives of probation:  rehabilitation and protection of the state and community interest." *Miller*, 175 Wis. 2d at 208.  And given the broad discretion afforded to the circuit court in sentencing, our review is limited to whether the circuit court erroneously exercised its discretion in imposing the condition.  *State v. Davis*, 2017 WI App 55, ¶12, 377 Wis. 2d 678, 901 N.W.2d 488.[8]

¶40    We have already explained why the condition was reasonably related to Howell's rehabilitation.  Howell pled no contest to child neglect and disorderly conduct, domestic abuse, of a child in her care pursuant to a guardianship.  The read-in charges involved physical abuse of a child and causing mental harm. Howell also acknowledged struggling with her own physical and mental issues. Given this record, the circuit court was rightly concerned not only about giving Howell the best chance of rehabilitation, but also about the need to protect the

---

[8] Citing *State v. Piddington*, 2001 WI 24, 241 Wis. 2d 754, 623 N.W.2d 528, Howell contends that we should review this issue de novo because it raises a question of statutory interpretation. Puzzlingly, the state agrees. But *Piddington* is not on point; that case examined a statute governing the administration of tests to determine if a driver is intoxicated. *Piddington*, 241 Wis. 2d 754, ¶13. Neither party cites any case in which a Wisconsin appellate court has reviewed a circuit court's decision to impose a condition on probation for the standard of review. *State v. Davis*, 2017 WI App 55, ¶12, 377 Wis. 2d 678, 901 N.W.2d 488, and others confirm that this issue is reviewed under the erroneous exercise of discretion standard.

children from the risk of similar treatment if she was allowed to continue to serve as a guardian. For these reasons, it was reasonable and appropriate to preclude Howell from continuing in a guardianship role during probation, including for her autistic grandchild. The condition is not unreasonable or inappropriate and as such, it also reflects a proper exercise of discretion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.