STATE of Wisconsin, Plaintiff-Respondent,

v.

Chad W. ZIEGLER, Defendant-Appellant.†

Court of Appeals

*Nos. 2005AP1098–CR, 2005AP1099–CR, 2005AP1100–CR.*
*Submitted on briefs January 6, 2006.*
*—Decided February 1, 2006.*

2006 WI App 49

(Also reported in 712 N.W.2d 76.)

† Petition to review denied 4-10-06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kenneth P. Casey* of *The University of Wisconsin Law School, Frank J. Remington Center*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Juan B. Colas*, assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. Chad W. Ziegler appeals from a postconviction ruling denying his motion for resentencing. Ziegler's motion contended that the trial court's sentencing remarks did not adequately explain why the court imposed consecutive sentences and how the length of the combined sentences served the sentence objectives. We disagree. We affirm.

## TRIAL COURT PROCEEDINGS

¶ 2. Ziegler was originally charged with three counts of party to the crime (PTAC) of burglary, two counts of PTAC of misdemeanor theft, operating a motor vehicle without the owner's consent as a passenger, retail theft, and misdemeanor bail jumping. Pursuant to a plea agreement, Ziegler pled no contest to the

three counts of PTAC of burglary. In exchange, the State dismissed, but read in for purposes of the sentencing, all of the remaining charges. In addition, the State was free to make any sentencing recommendation it deemed appropriate. The court accepted Ziegler's no contest pleas and ordered a presentence investigation (PSI) report. At this plea hearing, Ziegler was represented by two attorneys because the charges had been separately filed at different times, resulting in separate representation.[1]

¶ 3. At the sentencing, Ziegler was again represented by both of his attorneys. The trial court opened the proceedings by noting the PSI report recommendation for consecutive periods of confinement of five to seven years on each count for a total of fifteen to twenty-one years of confinement, followed by consecutive periods of extended supervision of three to four years on each count. The State followed with its request that the court impose consecutive periods of confinement of five years on each count for a total of fifteen years, followed by consecutive five-year periods of extended supervision.

¶ 4. Next, both of Ziegler's attorneys spoke on his behalf. One attorney recommended imposed and stayed prison sentences with county jail confinement as a condition of probation; the other attorney also recommended probation under either imposed and stayed prison sentences or straight probation. In addition, Ziegler presented statements from members of his family and his sponsor in his drug treatment program. Finally, Ziegler himself spoke, expressing remorse for

---

[1] The appellate record does not advise whether these attorneys were privately retained, appointed by the public defender's office, or appointed by the trial court.

his crimes and asking that the court fashion a sentence that would allow him to continue with his drug treatment.

¶ 5. That brings us to the trial court's sentencing remarks, which consume some fifteen pages of transcript. We recount these remarks in some detail since they lie at the heart of the appellate issues.

¶ 6. Before speaking to the sentencing factors and objectives, the court resolved some conflicting issues raised by the State's and Ziegler's sentencing statements. First, the trial court addressed whether Ziegler was the ringleader of the burglary group, which included younger offenders. The court observed that while Ziegler was older than the other participants, there was not sufficient information demonstrating that he was the ringleader.

¶ 7. Next, the trial court addressed the question of remorse. Acknowledging that Ziegler "could be conning me" with his claim of remorse, the court nonetheless rejected the PSI report, which questioned Ziegler's sincerity on this point. Instead, the court accepted Ziegler's expression of remorse "at face value."

¶ 8. Next, the trial court addressed the remarks of Ziegler's family, which attributed Ziegler's criminal conduct to difficulties during his teenage years, his involvement with drugs, and family members' opinions that he was a follower, not a leader. The court noted that many persons experience the same kind of difficulties but do not engage in criminal conduct. While the court accepted this history as background information, the court did not accept it as an excuse or explanation for Ziegler's criminal conduct.

¶ 9. Next, the trial court addressed Ziegler's request for probation so that he could continue with his treatment. The court commended Ziegler for getting

600

involved with this treatment, but the court observed that treatment was also available within the prison system.

¶ 10. The trial court then turned to the sentencing factors and objectives that the court deemed relevant. As to the severity of the crimes, the court rated Ziegler's crimes in the "mid-level" range on the court's sentencing guideline worksheet. The court did so because the burglaries were not committed on the "spur of the moment," but instead were planned out, even to the extent of Ziegler casing one of the sites in advance to check if surveillance cameras were in place. The court also noted Ziegler's use of gloves to avoid detection, and his instructions to a compatriot, who had stolen the vehicle of one of the victims, to get rid of a car because "it's going to be hot." In addition, the court observed that when one of the burglaries did not yield the loot expected, Ziegler and the others proceeded to burgle another place.

¶ 11. In response to Ziegler's argument that these events fell on a less serious scale because they occurred within a limited two-day period, the trial court responded that Ziegler was also charged in other courts with two additional burglaries committed the following day. When the police attempted to arrest Ziegler for one of those burglaries, he fled, resulting in an eluding charge. That charge had been dismissed, but read in, when Ziegler had admitted to the related burglary. Given this background, the court wondered aloud, "So my question is does he keep burglarizing if he doesn't get arrested that day."

¶ 12. Next, the trial court addressed Ziegler's character, focusing principally on Ziegler's substantial current contacts with the criminal justice system. The court correctly observed that Ziegler had no juvenile record and that his adult record was limited to two

misdemeanor convictions—a possession of marijuana conviction in Utah and an obstructing conviction.[2] The court stated that were this record the extent of Ziegler's contacts with the criminal justice system, the court would likely rate Ziegler as a lower risk. But the court concluded that the multitude of pending cases against Ziegler did not allow for that rating.

¶ 13. Those pending cases, as documented in the PSI report, included a drug-related charge in Illinois,[3] a first-degree sexual assault of a child under the age of thirteen, three counts of second-degree sexual assault of a child under the age of sixteen, two counts of manufacturing or delivering a controlled substance with intent to deliver, three counts of child enticement by giving or selling a controlled substance to a child, and four counts of felony bail jumping. In addition, although not documented in the PSI report, the court noted the two additional burglaries committed on the heels of the instant burglaries. Ziegler had admitted to one of these charges and a related charge and was awaiting sentencing on these matters in another branch of the Fond du Lac county circuit court. The court also noted that twelve other charges had been dismissed and read in in that case.

¶ 14. In conjunction with its assessment of Ziegler's character, the trial court acknowledged the support of Ziegler's family and credited Ziegler for his participation in the drug treatment program during the pendency of these charges.

---

[2] According to the PSI report, the obstructing conviction resulted in probation for Ziegler, but the probation "failed" and Ziegler "was sentenced to a short jail term with Huber privileges."

[3] According to the PSI report, an arrest warrant had been issued for Ziegler in that matter for failure to appear and a failure to comply with the bail and bond conditions.

¶ 15. Next, the trial court addressed the need to protect the public and observed that this need was "self-evident." On this point, the court recounted the totality of Ziegler's contacts with the criminal justice system that the court had previously noted when assessing Ziegler's character and which we have already summarized. As to the specific crimes in the instant case, the court again noted that they had been planned. The court described the events as a "crime spree" that merited confinement, not probation.

¶ 16. Finally, the trial court expressed its belief that this case warranted "escalating penalties," explaining that successive crimes warrant greater penalties than those imposed for prior crimes. ("[I]f you do something again the penalty's got to be more, and it's got to be a little bit more after that.") Under that logic, the court sentenced Ziegler sequentially, starting with the first burglary and concluding with the third burglary. The sequential sentences were: three years' confinement; three years and six months' confinement; and four years' confinement. After imposing the second period of confinement, the court stated that the confinement was consecutive to the first; and after imposing the third period of confinement, the court stated that the confinement was consecutive to the second. The aggregate period of the confinement portion of the consecutive sentences totaled ten and one-half years.[4] These sentences fell below those requested by the State and those recommended in the PSI report.

---

[4] The trial court also imposed corresponding periods of extended supervision: three years on each of the first two sentences and four years on the third sentence, producing a total sentence of twenty and one-half years. We do not read Ziegler to challenge the extended supervision portions of the sentences.

¶ 17. Postconviction, Zielger moved for resentencing, contending that the trial court had failed to adequately explain why the sentences were made consecutive and why ten and one-half years of total confinement was necessary to achieve the court's sentencing goals.[5] Ziegler's motion relied principally on *State v. Gallion*, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197. The trial court denied the motion following a hearing. Ziegler appeals.

## DISCUSSION

### *McCleary, Gallion, General Principles Governing Sentencing, and Standards For Appellate Review*

¶ 18. We begin our discussion with the same quote from *McCleary v. State*, 49 Wis. 2d 263, 182 N.W.2d 512 (1971), that introduced the supreme court's opinion in *Gallion*:

> In all Anglo-American jurisprudence a principal obligation of the judge is to explain the reasons for his [or her] actions. His [or her] decisions will not be understood by the people and cannot be reviewed by the appellate courts unless the reasons for decisions can be examined.

*McCleary*, 49 Wis. 2d at 280–81; *Gallion*, 270 Wis. 2d 535, ¶ 1. It is thus apparent that requisite to a prima facie valid sentence is a statement by the trial judge detailing the reasons for selecting the particular sentence imposed.

---

[5] In addition, Ziegler's motion sought sentence modification on the grounds of new factors. The trial court denied this motion, and Ziegler does not challenge this ruling on appeal.

¶ 19. In the wake of truth-in-sentencing, the *Gallion* court saw the need to "reinvigorate" *McCleary*. *Gallion*, 270 Wis. 2d 535, ¶ 4. Thus, *Gallion* did not change, but rather confirmed, the established law of *McCleary*. Bluntly put, *Gallion* was a "shot across the bow" to sentencing courts, reminding them of the *McCleary* dictates. We do not understand Ziegler to contend otherwise.

¶ 20. In addition, *Gallion's* reinvigoration of *McCleary* did not alter the applicable standards of appellate review of a trial court's sentence. *Gallion*, 270 Wis. 2d 535, ¶ 4. However, *Gallion* did require that appellate courts "more closely scrutinize the record to ensure that 'discretion was in fact exercised and the basis of that exercise of discretion [is] set forth.' " *Id.* (citation omitted).

¶ 21. Discretion contemplates a process of reasoning, which depends on the facts of record or that are reasonably derived by inference from the record, and a conclusion based on a logical rationale founded upon proper legal standards. *McCleary*, 49 Wis. 2d at 277.

¶ 22. On appeal, our review is limited "to determining if discretion was erroneously exercised." *Gallion*, 270 Wis. 2d 535, ¶ 17. When the trial court has properly exercised its discretion, we follow a consistent and strong policy against interference with the discretion of the trial court, and we afford a strong presumption of reasonability to the court's sentencing determination because the court is best suited to consider the relevant factors and demeanor of the convicted defendant. *Id.*, ¶ 18. Finally, we may not substitute our judgment for that of the trial court simply because we might have imposed a different sentence. *Id.*

¶ 23. The principal objectives of a sentence include, but are not limited to, the protection of the community, the punishment of the defendant, rehabilitation of the defendant, and deterrence to others. *Id.*, ¶ 40. A sentencing court should indicate the general objectives of greatest importance and explain how, under the facts of the particular case, the sentence selected advances those objectives. *Id.*, ¶¶ 41, 42. Besides the objectives of the sentence, the sentencing court must also identify the factors that the court considered in arriving at the sentence and must indicate how those factors fit the objectives and influenced the sentencing decision. *Id.*, ¶ 43. The primary sentencing factors which a court must consider are the gravity of the offense, the character of the defendant, and the need to protect the public. *State v. Davis*, 2005 WI App 98, ¶ 13, 281 Wis. 2d 118, 698 N.W.2d 823. The weight to be given to each factor is within the discretion of the sentencing court. *Id.* However, other factors may also be relevant. These include, but are not limited to:

1. the defendant's past criminal record,

2. the defendant's history of undesirable behavior pattern,

3. the defendant's personality, character and social traits,

4. the presentence investigation report,

5. the vicious or aggravated nature of the crime,

6. the degree of the defendant's culpability,

7. the defendant's demeanor before the court,

8. the defendant's age, educational background and employment record,

9. the defendant's remorse, repentance and coopera-tiveness,

10. the defendant's need for close rehabilitative control,

11. the rights of the public, and

12. the length of pretrial detention.

*Gallion*, 270 Wis. 2d 535, ¶ 43 & n.11. The sentencing court need not discuss all of these factors, but rather only those relevant to the particular case. *Id.*

¶ 24. In addition, the sentencing court may use the recommendations of counsel, any PSI report recom-mendation, and any applicable sentencing guidelines as "touchstones" in the sentencing decision. *Id.*, ¶ 47.

¶ 25. Finally, *Gallion* recognized that "the exer-cise of discretion does not lend itself to mathematical precision." *Id.*, ¶ 49. But, in the same breath, *Gallion* required "an explanation for the general range of the sentence imposed." *Id.* Although not changing the stan-dard of appellate review, *Gallion* also conveyed a mes-sage to appellate courts. We are not permitted to engage in "implied reasoning" by the sentencing court when we review a sentence. *See id.*, ¶ 50. Rather, we must have an "on-the-record explanation for the particular sen-tence imposed." *Id.*

¶ 26. With these principles reviewed, we turn to this case.

### Review Of The Trial Court's Sentence

¶ 27. Wisely, Ziegler does not challenge the suffi-ciency of the trial court's reasons to impose periods of confinement. We say this because the court's sentencing

remarks are a textbook example of a proper consideration of the relevant sentencing objectives and factors.

¶ 28. First, the trial court addressed and resolved the conflicting issues presented by the parties' sentencing statements. The State contended that Ziegler was the ringleader of the group and impugned Ziegler's claim of remorse. Ziegler contended otherwise. The court resolved these questions in favor of Ziegler. On the other hand, the court rejected the notion that Ziegler's conduct was explained or excused by the difficulties of his earlier years, his drug problems, and his tendency to be a follower, not a leader.

¶ 29. Having resolved those disputes, the trial court then thoroughly addressed the relevant sentencing objectives and factors. The court spoke to severity of the crimes, Ziegler's character, the need for protection of the public, Ziegler's past record, his history of undesirable behavior patterns as reflected by his pending cases, the PSI report and recommendation, the State's recommendation, the degree of Ziegler's culpability, and Ziegler's expression of remorse. Finally, the court explained its "escalating penalties" approach in instances where, as here, the court is confronted with successive offenses.

¶ 30. Instead, Ziegler's argument is that the trial court's sentencing remarks do not explain why consecutive sentences were necessary and why a ten- and-one-half-year period of aggregate confinement was necessary to accomplish the court's sentencing objectives. We address these separate arguments in a single discussion because our analysis of both claims rests on the same facts.

¶ 31. Ziegler correctly observes that a consecutive sentence must be supported by "a statement of reasons for the selection of consecutive terms." *State v. Hall*, 2002 WI App 108, ¶ 14, 255 Wis. 2d 662, 648 N.W.2d 41 (citation omitted).[6] Ziegler also correctly observes that the justification for the length of a sentence should be set forth in the record as well as the reasons for not imposing a sentence of lesser duration. *Gallion*, 270 Wis. 2d 535, ¶ 24.

¶ 32. We conclude that the trial court's sentencing remarks satisfy *Hall* as to the reasons for the consecutive sentences and *Gallion* as to the reasons for the length of the sentence. As noted, the trial court engaged in a thorough and exhaustive examination of the relevant sentencing objectives and factors. This discourse clearly reveals that the court considered Ziegler's character, as represented by his multiple crimes in this case and the numerous other offenses then pending against him, and the corresponding need to protect the public, as the most compelling factors in this sentencing.[7] Prior to his arrest, Ziegler was on a virtual crime spree. Besides the three burglaries in this case, we count some sixteen charges then pending against Ziegler at the

---

[6] In a later case, *State v. Matke*, 2004 WI App 4, ¶ 18, 278 Wis. 2d 403, 692 N.W.2d 265, the court of appeals held that *State v. Hall*, 2002 WI App 108, 255 Wis. 2d 662, 648 N.W.2d 41, applied in instances where multiple sentences were imposed at a single sentencing, not where a sentence was ordered consecutive to a sentence that the defendant was then serving. This is a *Hall* case, not a *Matke* case.

[7] A sentencing court is entitled to consider pending criminal charges against the defendant when imposing a sentence. *State v. Jackson*, 110 Wis. 2d 548, 551, 329 N.W.2d 182 (1983).

time of sentencing. These included additional burglaries, sexual assaults against children, manufacturing or delivering controlled substances, child enticements by the delivery of controlled substances, and multiple bail jumpings. In addition, some twelve other charges had been dismissed and read in in the case pending in another branch of the circuit court.[8] But for his arrest, the court was reasonably concerned that Ziegler would have continued in his criminal ways.

¶ 33. The maximum penalty for burglary, a Class F felony, is twelve years and six months. Thus, Ziegler faced potential maximum confinement for the three burglaries of thirty-seven years and six months. The State requested a sentence of five years' confinement on each count for a total of fifteen years' confinement. The PSI report recommended confinement of five to seven years on each count, for a total confinement of fifteen to twenty-one years of confinement. The trial court's confinement portion of the sentence was ten and one-half years, well under these recommendations. As *Gallion* notes, a sentencing court may use the recommendations of counsel and any PSI report as "touchstones" in the sentencing decision. Here, the trial court used the recommendations of the State and the PSI as "touchstones," but explained why it was fashioning a sentence less than those recommendations. Given that backdrop, we are not left to wonder why the court fashioned an aggregate confinement sentence of ten and one-half years.

¶ 34. Distilled to its core, Ziegler's argument that the trial court did not explain the reasons for the ten-and-one-half-year period of confinement is really

---

[8] The record does not reveal the nature of those read-in charges. Regardless, the sheer number confirms the trial court's "crime spree" statement.

one that augurs for mathematical precision in sentencing, a proposition that *Gallion* expressly disavows. Instead, *Gallion* requires "an explanation for the general range of the sentence imposed." *Gallion*, 270 Wis. 2d 535, ¶ 49. The trial court's sentencing remarks well satisfy this requirement.

¶ 35. As to Ziegler's complaint that the trial court did not adequately explain why it imposed consecutive sentences, we recall what we have already recited regarding Ziegler's substantial contacts with the criminal justice system. After reciting that history, the trial court employed an "escalating penalty" mechanism under which the court saw the need for increased penalties for successive crimes. That logic is unassailable under the facts of this case. As the court noted, these burglaries were not "spur of the moment" offenses committed on a lark. Instead, the crimes were planned out. In one instance, Ziegler cased one of the burglary sites in advance to make sure there were no surveillance cameras. He wore gloves to avoid detection. When one of the burglaries did not yield the expected swag, Ziegler and his compatriots moved on to another site. Ziegler instructed his compatriot, who had stolen a car belonging to one of the victims, to get rid of the vehicle because it was "hot." Based on the totality of the history Ziegler presented, the trial court reasonably chose to impose escalating consecutive penalties by way of increased sentences for the second and the third burglaries.

¶ 36. Ziegler would have us conclude that the trial court's "escalating penalties" traveled only to the individual sentences meted out on the second and third burglaries, not to the trial court's decision to make all of the sentences consecutive. We reject that interpretation of the court's remarks. After the court had addressed

the relevant sentencing objectives and factors, the court explained that it would employ the "escalating penalties" methodology in sentencing Ziegler. Immediately thereafter, the court sentenced Ziegler sequentially on each count. When the court imposed the sentence for the second burglary, the court immediately stated the sentence was consecutive to the first sentence. Similarly, when the court imposed the sentence for the third burglary, the court immediately stated that the sentence was consecutive to the second sentence. Thus, the court's underlying rationale for the individual sentences and the court's accompanying decision to make the sentences consecutive were part of a capsulated sentencing disposition and explained in a capsulated fashion.

¶ 37. As with Ziegler's argument regarding the length of the sentence, we are not left to wonder why the sentences were made consecutive.

## CONCLUSION

¶ 38. We hold that the trial court sufficiently explained its reasons for imposing consecutive sentences and why the ten-and-one-half-year aggregate amount of those sentences was proper.

*By the Court.*—Orders affirmed.