STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey S. FIREBAUGH, Defendant-Appellant.

Court of Appeals

*No. 2010AP3083–CR. Submitted on briefs October 4, 2011.*
*—Decided October 18, 2011.*

2011 WI App 154

(Also reported in 807 N.W.2d 245.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Jeffrey S. Firebaugh*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christopher G. Wren*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Peterson, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J.   In 2004, Jeffrey Firebaugh was given a sentence of twenty years for homicide by intoxicated use of a motor vehicle. He now appeals, pro se, an order denying his motion for resentencing and an order denying his motion for reconsideration. He contends the sentencing court failed to consider the applicable sentencing guideline. Because we conclude there was no applicable sentencing guideline, we affirm.[1]

## BACKGROUND

¶ 2.   Firebaugh's offense date was March 13, 2004. He was convicted on November 10, 2004. Firebaugh was sentenced to ten years' initial confinement followed by ten years' extended supervision, for a total sentence of twenty years.

¶ 3.   In 2010, Firebaugh filed a motion for resentencing. He asserted that under *State v. Grady*, 2007 WI 81, 302 Wis. 2d 80, 734 N.W.2d 364, and WIS. STAT.

---

[1] The State requests publication "in the interest of forestalling similar claims."

§ 973.017(2)(a),[2] the sentencing court was required, but failed, to consider the applicable sentencing guideline. In his motion, Firebaugh maintained that there was a "sentencing guideline adopted by the sentencing commission for homicide by intoxicated use of a motor vehicle."

¶ 4.   The circuit court denied Firebaugh's resentencing motion and a subsequent motion for reconsideration. It determined that there was no guideline at the time of Firebaugh's sentencing for homicide by intoxicated use of a motor vehicle.

## DISCUSSION

■

¶ 5.   On appeal, our review is limited to determining whether the circuit court erroneously exercised its discretion. *State v. Ziegler*, 2006 WI App 49, ¶ 22, 289 Wis. 2d 594, 712 N.W.2d 76. Under that standard, we will sustain discretionary acts if we find the circuit court examined the relevant facts, applied a proper standard of law, and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach. *Sands v. Whitnall Sch. Dist.*, 2008 WI 89, ¶ 13, 312 Wis. 2d 1, 754 N.W.2d 439. "When the trial court has properly exercised its discretion, we follow a consistent and strong policy against interference with the discretion of the trial court, and we afford a strong presumption of reasonability to the court's sentencing determination . . . ." *Ziegler*, 289 Wis. 2d 594, ¶ 22.

¶ 6.   For all felony offenses committed after February 1, 2003, WIS. STAT. § 973.017(2)(a) required the sentencing court to consider "the sentencing guidelines

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

adopted by the sentencing commission under s. 973.30 or, if the sentencing commission has not adopted a guideline for the offense, any applicable temporary sentencing guideline adopted by the criminal penalties study committee created under 1997 Wisconsin Act 283." In *Grady*, 302 Wis. 2d 80, ¶ 44, our supreme court held that "a circuit court satisfies its § 973.017(2)(a) obligation when the record of the sentencing hearing demonstrates that the court actually considered the sentencing guidelines and so stated on the record."[3]

¶ 7.   One must understand the recent history of the Wisconsin Sentencing Commission to fully under- stand our resolution of this appeal. Wisconsin's transi- tion from indeterminate to determinate sentencing formally began in 1998, with the enactment of 1997 Wis. Act 283. Section 454 of that Act created the Criminal Penalties Study Committee (CPSC), which was tasked with "study[ing] the classification of crimi- nal offenses in the criminal code, the penalties for all felonies and Class A misdemeanors and issues relating to the implementation of the changes in sentencing made by this act." *See* 1997 Wis. Act 283, § 454(1)(e).

¶ 8.   The CPSC's legislative mandate also required it to chart a course for sentencing guideline use in Wisconsin. The legislature required the CPSC to make recommendations concerning the "creation of a sen- tencing commission to promulgate advisory sentencing guidelines for use by judges when imposing sentence under section 973.01 of the statutes, as created by this act." 1997 Wis. Act 283, § 454(1)(e)4. In the interim, the CPSC was to recommend "[t]emporary advisory sen-

---

[3] Although Firebaugh relies heavily on *Grady*, the supreme court noted that its decision "will become effective for any sentencing occurring after September 1, 2007." *State v. Grady*, 2007 WI 81, ¶ 45, 302 Wis. 2d 80, 734 N.W.2d 364.

tencing guidelines . . . during the period before the promulgation of advisory sentencing guidelines by a sentencing commission." 1997 Wis. Act 283, § 454(1)(e)5.

¶ 9. The CPSC formed a sentencing guidelines subcommittee which was tasked with creating a sentencing commission and developing temporary advisory sentencing guidelines. JOE FONTAINE, WIS. SENTENCING COMM'N, SENTENCING POLICY IN WISCONSIN: 1975–2005 AT 36 (2005). The subcommittee's task was daunting; because of lost, inaccessible, or antiquated data, the subcommittee "lacked reliable data on state sentencing practices by which to construct descriptive ranges." *Id.* at 44. Time presented another problem. The CPSC's final report noted the former sentencing commission had taken eleven years to develop sixteen guidelines. CRIMINAL PENALTIES STUDY COMM., FINAL REP. 108 (1999). "The CPSC, with a single program staffer and no easily accessible data, had to develop guidelines in less than a tenth of that time." FONTAINE, *supra,* at 44.

¶ 10. As a result, the CPSC developed guidelines only for the eleven crimes that consumed the vast majority of corrections resources devoted to prisoners. FINAL REP., *supra,* at 108. For the remainder of crimes, the CPSC simply developed a conversion table "to numerically convert 'old world' indeterminate sentences to 'new world' Truth-in-Sentencing determinate sentence ranges."[4] *Id.* at 107. The task of developing additional and permanent sentencing guidelines was left to the sentencing commission. *Id.*

¶ 11. The Wisconsin Sentencing Commission was created by 2001 Wis. Act 109, § 14, which became law in

---

[4] The conversion table does not constitute sentencing guidelines. *See Grady*, 302 Wis. 2d 80, ¶ 40 ("Sentencing guidelines include more than simply a sentencing range.").

2002. *See* Wis. Sentencing Comm'n, Ann. Rep. 1 (2005). The Commission began meeting in the fall of 2003, and staff operations began in January 2004. *Id.* In July 2005, the Commission announced that updated sentencing guideline worksheets were available for the eleven offenses for which the CPSC had developed guidelines. Wis. Sentencing Comm'n, Sentencing in Wisconsin, Vol. 2, No. 11, The Sentencing Guidelines Worksheets, Revised (July 22, 2005). The Commission intended to adopt permanent sentencing guidelines in 2006. Ann. Rep., *supra,* at 15.

¶ 12.   At the time of Firebaugh's sentencing, neither the CPSC nor the Commission had developed a sentencing guideline for homicide by intoxicated use of a motor vehicle. The offenses for which guidelines were developed included first- and second-degree sexual assault, first- and second-degree child sexual assault, burglary, theft, robbery, armed robbery, forgery and uttering, delivery or possession with intent to deliver cocaine, and delivery or possession with intent to deliver marijuana. *Compare* Final Rep., *supra,* at 114, *with* Sentencing in Wisconsin, *supra.* We believe the State's brief best sums up our conclusion:

> In short, Firebaugh's motion and appeal misfire because Firebaugh seeks an *impossible* remedy:   consideration of sentencing guidelines that did not exist at the time of his sentencing and that have not existed at any time since his sentencing.

¶ 13.   We wish to address one final point raised in Firebaugh's brief. He contends that in *State v. Gallion,* 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, our supreme court directed the circuit court to apply Wis. Stat. § 973.017(2)(a) to a defendant convicted of homi-

cide by intoxicated use of a motor vehicle. It did not. Our supreme court noted that truth-in-sentencing legislation placed increased responsibility on the judiciary for ensuring a fair and just sentence, and required that a court adequately explain its sentence on the record. *Id.*, ¶¶ 31–32, 39. The court's only mention of § 973.017(2)(a) was a generic statement that courts must consider "any applicable temporary sentencing guidelines adopted by the Criminal Penalties Study Committeee and . . . in the future any applicable guidelines adopted by a sentencing commission." *Id.*, ¶ 47. Indeed, the court affirmed the defendant's conviction even though the sentencing court apparently did not mention a guideline—presumably because none existed. *See id.*, ¶¶ 59–62.

*By the Court.*—Orders affirmed.