COURT OF APPEALS
DECISION
DATED AND FILED

July 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP509-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CF57

**IN COURT OF APPEALS**
**DISTRICT II**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

DAVID P. MUELLER,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: RALPH A. RAMIREZ and JENNIFER R. DOROW, Judges. *Affirmed.*

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. David P. Mueller appeals from a judgment convicting him of homicide by intoxicated use of a vehicle and an order denying his postconviction motion for resentencing or sentence modification.[1]  For the reasons that follow, we affirm

## BACKGROUND

¶2     Mueller, then twenty-one years old, drove to work one early January morning at 7:06 a.m.  He had been consuming alcohol for the past thirty-six hours and his blood-alcohol concentration was 0.317 grams per 100 milliliters.  It was snowing.  He lost control of his vehicle, crossed over the center line, and crashed into an oncoming vehicle.  The driver of the other vehicle, M.D., was transported to the hospital via Flight for Life.  M.D. suffered a ruptured diaphragm, broken ribs, a fractured ankle, a fractured femur, a broken eye socket, several breaks to his hips, and disrupted internal organs.  His injuries left him intubated and unable to speak.  He passed away ten days later.

¶3     Mueller was charged with homicide by intoxicated use of a vehicle, homicide by negligent operation of a vehicle, and homicide by intoxicated use of a vehicle with a prohibited alcohol concentration.  As part of a negotiated settlement, Mueller pled guilty to homicide by intoxicated use of a vehicle, and the other charges were dismissed.  The State agreed to recommend ten to twelve years of initial confinement.

---

[1]  The Honorable Ralph M. Ramirez presided at sentencing and entered the judgment of conviction.  The Honorable Jennifer R. Dorow heard and decided Mueller's postconviction motion.

¶4 At sentencing, several members of M.D.'s family addressed the circuit court. His son explained that M.D. was his best friend and was beloved throughout the community. He told the court that after M.D.'s death, his two-year-old daughter wandered around her grandfather's house looking for him. M.D.'s daughter-in-law described his immense pain and suffering during the ten days he spent in the hospital prior to his death. She stated that the first thing he asked her was, "[A]m I dead?"

¶5 M.D.'s brother recounted how M.D. became a father figure after the unexpected deaths of their parents, calling him "the glue that held our family together." M.D.'s daughter explained that she moved in with M.D. when she was diagnosed with cancer so he could take care of her and her daughter. She stated that her prognosis became much worse as a result of M.D.'s death and that she had an estimated six to twelve months to live. M.D.'s wife told the court they had been planning to celebrate their fortieth wedding anniversary the week after the crash. She explained that M.D. sometimes went outside after a snowstorm "just to see who was stuck to see if he could help them get out," asking nothing in return. All of them asked that Mueller receive the maximum sentence.

¶6 The defense recommended five years of initial confinement followed by ten years of extended supervision. Trial counsel explained that Mueller did everything the court asked of him while the case was pending and willingly participated in counseling. He also stated that Mueller was physically abused by his father and resorted to self-harm as early as fourth grade. Mueller's substance abuse counselor told the court that he accepted responsibility for his actions and had made significant progress in counseling. Mueller's mother explained that her son always "tries to ensure that no one else is mean to anyone," and that his goal now is to become a counselor and help others avoid making the mistake he made.

Mueller's mother's boyfriend, who knew Mueller for nine years, said he was a "kind, quiet, respectful kid" and had made positive changes since the crash. Mueller apologized, accepted responsibility, and stated that he hoped to repay the community by "educating others on the dangers of addiction." In addition, the defense provided the court with several letters attesting to Mueller's work in recovery since the accident and positive aspects of his character, including his strong work ethic, honesty, and caring nature. His mother's coworker wrote that Mueller assisted her elderly mother with household tasks and frequently visited group homes to spend time with elderly residents.

¶7 In imposing sentence, the circuit court began its remarks by determining the crime to be "a serious one," as reflected by the statutory maximum. The court considered that Mueller's BAC was extremely high, that he engaged in dangerous driving by crossing the center line, and that the accident occurred at 7:00 a.m., a time when many people are on the road heading to work or tending to their responsibilities. The court found the time of day to be "an extremely aggravating factor." The court also considered Mueller's age to be an aggravating factor, especially in light of his use of alcohol to self-medicate and his mental health problems. The court stated its belief "that this level of intoxication .317 at 7:00 o'clock in the morning reflects a substantial, major, giant problem with alcohol. It's disturbing to see it at his age."

¶8 The circuit court focused on the crime's impact, stating that M.D.'s family and friends had experienced a great loss, and that the offense had "a big impact on the community as a whole. One of our citizens, a productive and honest, hard working member of the community who has a big impact on fellow community members, that's something that matters." The court added:

> So, that is a factor that I look at. Quite honestly, a number of years ago there was a case and the non-lawyers are not going to know this, *Gallion*.[2] A judge looked at things and weighed the value of the life of the perpetrator and the life of the victim, and we have not a dissimilar case here.

¶9    In discussing Mueller's character and background, the circuit court said it had "no doubt that Mr. Mueller is very sorry for what he has done," noting that it had seen the tears and pain on his face during the hearing. The court found that Mueller's remorse was "genuine" and "real." The court also acknowledged that Mueller had a terrible childhood and suffered from mental health problems, which led him to turn to alcohol and drugs. The court found that, "Instead of handling stress and despair prosocially, he isolated himself and turned to alcohol and drugs." The court acknowledged that there had been a positive change in Mueller since "[t]his tragedy" but said "the aggravating part about that is that it took the death of [M.D.] to bring that change."

¶10    Before imposing sentence, the circuit court stated:

> So, when I impose a sentence in this case, taking those things into consideration, I do weigh the value of [M.D.] to Mr. Mueller. We lost a good one. We lost a good one. We lost a man who not just went to work at 7:00 o'clock in the morning and paid his bills, but we lost a man who went to work, paid his bills, stayed committed to his wife, held his family primary first and foremost. Made his friends his family. Helped friends. Helped his children's friends. Filled in as a father. Did charitable work and many many more things. So, we lost a good one.
>
> We lost him to somebody who was at the time of the incident involved in self-pity, wallowing in his own problems, and medicating those problems with alcohol and so on. So, the sentence I impose reflects those things.

---

[2]    *State v. Gallion*, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197.

¶11 Finally, the sentencing court explained that "the maximum penalties should be reserved for those who do not take responsibility," and noted that Mueller took responsibility. The sentencing court then imposed fourteen years of initial confinement followed by ten years of extended supervision, which is one year less than the maximum.

¶12 Postconviction, it was discovered that three additional character letters written on Mueller's behalf were never received by the sentencing court. The letters described additional prosocial and charitable actions Mueller had taken, such as buying groceries and picking up medication for his mother's clients, shoveling the sidewalk, and driving his mother to work in inclement weather.

¶13 Mueller filed a postconviction motion asserting that the new character letters constituted a new factor warranting sentence modification, namely, a two-year reduction in his term of initial confinement. Alternatively, he requested resentencing on grounds that the court relied on an improper factor at sentencing when it compared his character to M.D.'s character.[3] This comparison, he asserted, had caused the court to impermissibly increase his sentence because it believed his life was less valuable than M.D.'s.

¶14 After further briefing, the circuit court denied Mueller's postconviction motion from the bench. With regard to the sentence modification claim, the court determined that though the character letters constituted a new factor, they did not justify a sentence reduction. As to Mueller's resentencing

---

[3] Mueller's postconviction motion also requested that the circuit court reduce the ten-year ignition interlock period ordered at sentencing down to five years. The court granted this request.

claim, the court stated that the *Gallion* case neither prohibits a sentencing court from looking at a victim's character, nor does it "explicitly hold that considering any comparative value of a victim and the defendant's character is an improper sentencing factor." The court declined to rule that weighing the value of a defendant's character or life against a victim's character or life was an improper sentencing factor, and further determined that the sentencing court had not actually relied on this allegedly improper factor in sentencing Mueller:

> I don't believe that that's what Judge Ramirez did. He relied upon the conduct of Mr. Mueller, he relied upon the impact of this crime on the family and community, but he did not weigh Mr. Mueller's life and his character less in relationship to [M.D.'s]. That is just not something that he did.

This appeal follows.

## DISCUSSION

*The circuit court properly denied Mueller's postconviction motion requesting the modification of his sentence.*

¶15 Mueller maintains that the circuit court erred in denying his postconviction motion for a sentence modification. A trial court is permitted to modify a sentence based on the existence of a new factor. *State v. Harbor*, 2011 WI 28, ¶¶35, 37-38, 333 Wis. 2d 53, 797 N.W.2d 828. A new factor is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because … it was unknowingly overlooked by all of the parties." *Id.*, ¶¶36, 40.

¶16 A defendant seeking modification of his or her sentence based on a new factor must demonstrate both the existence of a new factor and that the new

7

factor justifies modification of the sentence. *Id.*, ¶38. The existence of a new factor does not automatically entitle the defendant to sentence modification. *Id.*, ¶37. "Rather, if a new factor is present, the circuit court determines whether that new factor justifies modification of the sentence." *Id*. Though the existence of a new factor presents a question of law we review de novo, whether and to what degree a sentence should be modified is a discretionary determination for the circuit court. *Id.*, ¶¶36-37. A circuit court's discretionary determination will be sustained if it examined the proper facts, applied the correct standard of law, and reached a reasonable conclusion using a rational process. *Gaugert v. Duve*, 2001 WI 83, ¶44, 244 Wis. 2d 691, 628 N.W.2d 861.

¶17 Assuming for purposes of this decision that the character letters constituted a new factor, we conclude that the circuit court did not erroneously exercise its discretion in denying Mueller's motion for sentence modification. Here, after looking at the letters in context, the court determined that the sentencing court emphasized the gravity of the offense, including the impact on the victims. It reasoned:

> So, while the letters do shed light on very positive attributes of Mr. Mueller's character, while it can be said that those are new factors, in my discretion I am finding that it is not so strong of a factor that would change the course of sentencing.

¶18 Our review of the circuit court's discretionary decisions is extremely deferential. "The court's discretionary determinations are not tested by some subjective standard, or even by our own sense of what might be a 'right' or 'wrong' decision in the case." *State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995). Rather, this court will not overturn the circuit court's exercise of discretion "unless it can be said that no reasonable judge, acting on the

same facts and underlying law, could reach the same conclusion." *Id*. Mueller has not met this high standard.

¶19 In a bid to skirt our deferential review of discretionary decisions, Mueller asserts that the postconviction court relied on the false assumption "that the sentencing court did not actually consider the comparative value of Mr. Mueller's and M.D.'s respective characters and lives in imposing sentence." *See State v. Delgado*, 223 Wis. 2d 270, 280, 588 N.W.2d 1 (1999) ("A circuit court's erroneous view of the facts or the law constitutes an erroneous exercise of discretion."). We are not persuaded. The postconviction court applied the correct legal standard to the facts and explained its decision on the record. This is a demonstrably proper exercise of discretion with which we will not interfere.

*The circuit court did not erroneously exercise its discretion at sentencing.*

¶20 Mueller contends that the sentencing court erroneously exercised its discretion by comparing his character to M.D.'s character. He asserts that such a comparison is irrelevant to the permissible objectives of sentencing and is therefore an improper factor.

¶21 It is a well-settled principle of law that sentencing is committed to the circuit court's discretion. *See State v. Gallion*, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. On review, we afford the sentencing court a strong presumption of reasonability, and if discretion was properly exercised, we follow "a consistent and strong policy against interference" with its determination. *Id.*, ¶18.

¶22 In fashioning sentence, the circuit court must consider the gravity of the offense, the character of the offender, and the need to protect the public. *State*

9

*v. Ziegler*, 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76. The weight to be given to each factor is committed to the court's sound discretion. *Id.* A sentencing court erroneously exercises its discretion if it actually relies on irrelevant or improper factors. *State v. Harris*, 2010 WI 79, ¶66, 326 Wis. 2d 685, 786 N.W.2d 409. To establish error, it is the defendant's burden to prove by clear and convincing evidence that the sentencing court actually relied on an improper factor. *Id.*

¶23   In support of his argument that the circuit court improperly increased his sentence based on an irrelevant character comparison, Mueller cites to *Gallion*, a factually similar case in which the Wisconsin Supreme Court held that a victim's good character and the impact of the victim's death on his family and community are proper sentencing factors, as they directly relate to the gravity of the offense. *Gallion*, 270 Wis. 2d 535, ¶¶11, 68. In affirming the sentence imposed, the *Gallion* court emphasized that a sentencing court has "wide discretion in determining what factors are relevant to its sentencing decision." *Id.*, ¶68.

¶24   Mueller has not met his "heavy burden" to show that the circuit court erroneously exercised its discretion at sentencing. *Harris*, 326 Wis. 2d 685, ¶30. As in *Gallion*, the good character of the victim and the impact of his death on friends and family was relevant to the gravity of the offense and was not given undue weight. *Gallion*, 270 Wis. 2d 535, ¶¶52, 63-70. "[I]t is unrealistic to expect judges to listen to friends and family of the victim and to not consider their testimony." *Id.*, ¶68.

¶25   Further, it is beyond dispute that character of the defendant is a primary sentencing factor, and that in this case, the circuit court considered both mitigating and aggravating facts concerning Mueller's character. As Mueller

concedes, *Gallion* does not hold that a sentencing court cannot compare the victim's character to that of the defendant. To permit a sentencing court to consider the character of the victim and the defendant but prohibit any character comparison would be illogical and would elevate form over substance. A sentencing court must weigh and compare all the relevant sentencing factors in exercising its discretion. That is precisely what the court did in this case.

¶26 Finally, as the postconviction court recognized, the sentencing court viewed the gravity of the offense as the most important sentencing factor in this case. The sentencing court stated, "I believe that a substantial term of initial confinement is necessary to reflect the enormity of the loss [of M.D.]." The enormity of the loss has nothing to do with Mueller's character. Rather, it reflects the sentencing court's recognition that M.D. was an exemplary person whose death devastated his family, friends, and community, and who will no longer be able to benefit his community through his many positive actions. Simply put, the importance of Mueller's character paled in comparison to the gravity of the offense. Mueller has not shown any "unreasonable or unjustified basis" for his sentence that would cause us to question its propriety. *See State v. Taylor*, 2006 WI 22, ¶18, 289 Wis. 2d 34, 710 N.W.2d 466 (quoted source omitted).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.