# COURT OF APPEALS
## DECISION
## DATED AND FILED

## February 4, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.   2023AP1962-CR**
**2023AP1963-CR**
**2023AP1964-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos.  2017CF3925
2017CF5217
2017CF5557

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DEMETRIS DESHAWN GRANT,

DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Milwaukee County: MICHAEL J. HANRAHAN and MICHELLE ACKERMAN HAVAS, Judges. *Affirmed*.

Before Donald, P.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Demetris Deshawn Grant appeals from judgments of conviction related to three criminal cases and an order denying his motion for postconviction relief. Specifically, Grant argues: (1) the circuit court improperly joined the three cases for trial; (2) the evidence was insufficient for conviction; and (3) the sentence was unduly harsh and unconscionable. We affirm.

## BACKGROUND

¶2 In 2017, Grant was charged in three separate cases based on three separate shootings. In the first case, Grant was charged with armed robbery, first-degree reckless injury while using a dangerous weapon, taking hostages while using a dangerous weapon, and felon in possession of a firearm, all related to a shooting incident that took place on July 9, 2017, on South 34th Street in Milwaukee. According to the complaint, Jeff[1] reported that three armed men approached him and his two friends, Morris and Ralph, and demanded money from them. Jeff stated the armed men took property from him including his ATM card, wallet, phone, and $900. One of the men, later identified to be Grant, entered the car with the three victims and ordered Jeff at gunpoint to drive to a bank so Jeff could withdraw money for him. When Jeff was unable to withdraw money from the first bank, Grant ordered Jeff to drive to a second bank. While driving to the second bank, Jeff observed police officers and drove towards them. Grant then shot Jeff in his right knee and foot and fled in a car with the other two suspects. Morris and Ralph made similar statements to police. Morris reported the men took his wallet, phone, and

---

[1] We use pseudonyms to refer to the victims in these cases "to better protect the privacy and dignity interest of crime victims." WIS. STAT. RULE 809.86(1) (2021-22).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2

$600. Ralph reported the men took his wallet, phone, and $350. Jeff and Morris independently identified Grant from a photo array as the man who shot Jeff.

¶3    In the second case, the State charged Grant with first-degree recklessly endangering safety while using a dangerous weapon and felon in possession of a firearm in connection with a shooting on July 17, 2017, on South 19th Street in Milwaukee. According to the complaint, Ben reported that as he was walking with a group of people, a green Buick stopped behind them. The driver, later identified as Grant, exited the car and asked the group "what they said to him." Ben told police that no one responded and that they continued walking. Shortly thereafter, Ben saw Grant and another man from the green Buick walking towards them, and Grant began firing a gun at them. Ben identified Grant as the shooter based on a photo array, and the casings found at the scene matched the casing found at the July 9, 2017 scene.

¶4    In the third case, the State charged Grant with attempted first-degree intentional homicide while using a dangerous weapon, first-degree reckless injury while using a dangerous weapon, and felon in possession of a firearm in connection with a shooting on July 30, 2017, on South Muskego Avenue in Milwaukee. According to the complaint, Joseph and Andrew were walking towards a taco truck when a green Buick almost hit them, prompting a verbal exchange between them and the driver. While in line at the taco truck, Joseph stated that he felt someone approach behind him and saw that it was the driver. Joseph stated that as he was turning he "felt as if he was punched in the face and then in his shoulder," but he was actually shot in the face and the arm. While running away from the driver's gunfire, Joseph returned fire. Andrew similarly reported that while waiting in line at the taco truck, he saw two men behind them start shooting. While running away,

3

Andrew was shot in the back of the shoulder. The .45 caliber casings found at the scene matched the .45 caliber casings from the July 9, 2017 and July 17, 2017 shootings.

¶5      The State moved to join the three cases under WIS. STAT. § 971.12(1), arguing that the three cases were "connected together" and constituted "parts of a common scheme or plan." It argued that the casings from each shooting were fired from the same weapon, the shootings occurred close in proximity and within three weeks of each other, and a green Buick was identified at each scene.[2] Grant objected to joinder, arguing that the cases involved different victims, different crimes, and joining the cases would confuse the jury and allow them to infer that Grant was a "bad guy" with a criminal disposition.

¶6      The circuit court partially granted the State's motion and joined the July 17, 2017 and July 30, 2017 cases but declined to join the July 9, 2017 case. The court found that the July 17th and July 30th shootings both arose out of verbal altercations wherein Grant felt insulted and began shooting, whereas the July 9th shooting arose from a robbery motive.

¶7      The State moved for reconsideration or, alternatively, to admit other-acts evidence. It argued that separating any of the three cases would not accomplish anything because evidence of the other two incidents would be admissible in all three individual cases as other-acts evidence. The circuit court agreed with the State. It additionally concluded that there was commonality between the three

---

[2] Although the complaint in the July 9, 2017 case does not reference a green Buick, Morris is recorded on an officer's body camera identifying a green Buick following him, Jeff, and Ralph. Jeff later testified at trial that the men who robbed him and his friends were following them in a "green, compact car."

shootings because they all allege that Grant "use[d] a gun to get what he wanted from people." The circuit court joined all three cases for trial.

¶8      The jury convicted Grant of all nine charges. The circuit court imposed a combination of concurrent and consecutive sentences that resulted in an aggregate, fifty-two-year imprisonment term comprised of thirty-two years of initial confinement and twenty years of extended supervision. Grant filed a postconviction motion for relief arguing: (1) the court erred when it joined the three cases; (2) the evidence presented was insufficient for conviction; and (3) the sentence was unduly harsh and unconscionable and constituted an erroneous exercise of discretion. The postconviction court concluded that joinder of the cases was proper, the evidence was sufficient, and the sentence was not unduly harsh and unconscionable.

¶9      Grant appeals.

## DISCUSSION

### I.      The circuit court properly joined Grant's three cases.

¶10      Grant's first claim on appeal is that the circuit court erred when it granted the State's motion for reconsideration and joined the three cases for trial.[3] The initial decision to join cases is a legal question that is considered *de novo*.[4] ***State v. Salinas***, 2016 WI 44, ¶30, 369 Wis. 2d 9, 879 N.W.2d 609.

---

[3] Grant's argument on appeal is whether the reconsidered joinder of the July 9, 2017 case with the July 17th and July 30th cases was proper. Grant does not argue that the joinder of the July 17th and July 30th cases was improper. Therefore, we do not discuss this issue.

[4] Motions to sever cases after initial joinder are reviewed under an erroneous exercise of discretion, but Grant did not make a motion to sever in this case. ***State v. Salinas***, 2016 WI 44, ¶30, 369 Wis. 2d 9, 879 N.W.2d 609.

¶11 Under WIS. STAT. § 971.12(1), initial joinder of two or more crimes is proper when the crimes are: (1) of the same and similar character, (2) based on the same act or transaction, (3) based on two or more acts or transactions connected together, or (4) based on two or more acts or transactions constituting parts of a common scheme or plan. *Salinas*, 369 Wis. 2d 9, ¶31. The Wisconsin Supreme Court clarified when crimes are "connected together" by providing seven nonexclusive factors including:

> (1) are the charges closely related; (2) are there common factors of substantial importance; (3) did one charge arise out of the investigation of the other; (4) are the crimes close in time or close in location, or do the crimes involve the same victims; (5) are the crimes similar in manner, scheme or plan; (6) was one crime committed to prevent punishment for another; and (7) would joinder serve the goals and purposes of WIS. STAT. § 971.12.

*Salinas*, 369 Wis. 2d 9, ¶43.

¶12 Although WIS. STAT. § 971.12(3) permits a circuit court to order separate trials if the defendant shows "substantial prejudice," the joinder statute is to be construed broadly in favor of the initial joinder, and we presume the proper joinder of criminal chares is non-prejudicial. *State v. Prescott*, 2012 WI App 136, ¶13, 345 Wis. 2d 313, 825 N.W.2d 515; *Salinas*, 369 Wis. 2d 9, ¶31.

### a. The cases were "connected together."

¶13 First, Grant argues that the cases were not properly joined because each case involved different victims who did not know each other. But "crimes involving the same victim" is only one consideration in the analysis, and the three incidents have more commonalities than differences.

6

¶14    For example, ballistics reports determined that the same .45 caliber gun was discharged at all three scenes. Victims in all three incidents associated their assailant with a green Buick which police later connected to Grant. All three incidents are closely related in both time and location, occurring within a twenty-one-day span in the same 2.5-mile radius of the same neighborhood in Milwaukee. In all three cases, Grant was charged with being a felon in possession of a firearm. Additionally, joinder of all three cases avoided the inconvenience and expense of scheduling and conducting three trials, and it ensured that witnesses and victims would only have to testify once. *Salinas*, 369 Wis. 2d 9, ¶36.

¶15    Moreover, we agree with the circuit court on reconsideration that the three cases share a common manner, scheme, or plan because in each case, Grant "went armed" and "used a gun to get what he wanted, whether it was to remedy what appears to be disrespect of people ... or if it was to get the armed robbery, it was to use a gun to get what he wanted from people." We are satisfied that the initial joinder of all three cases was proper.

### b. Evidence from the three cases would have been admissible in any individual case as other-acts evidence.

¶16    Second, Grant argues the circuit court erred in determining that the evidence from all three cases would be admitted as other-acts evidence in any one case under the three-part test set forth in *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998). To be admissible, the other-acts evidence must: (1) be offered for a proper purpose (e.g., preparation, plan, or identity); (2) be relevant; and (3) have probative value that is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" *Id.* at 772-73. We review the circuit court's decision regarding the admissibility of other-acts

7

evidence for an erroneous exercise of discretion, affirming the decision if the court "examined the relevant facts[,] applied a proper standard of law[,] and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." *Id.* at 780-81.

¶17     We conclude that the circuit court did not erroneously exercise its discretion, and we agree that evidence from any of the three cases would have been admissible in any individual case as other-acts evidence. Under the first prong, the circuit court concluded that evidence from the different crimes would be admissible for a proper purpose in any individual trial because Grant's decision to "use a gun to get what he wanted from people" is relevant to Grant's preparation or plan. Additionally, the fact that the same gun was used in all three incidents, that the victims in the three incidents all described a green Buick, and that Grant drove a green Buick is relevant to proving identity (i.e., that the same person was involved in all three incidents). We agree that these purposes are proper for introducing other-acts evidence under the first prong of *Sullivan*.

¶18     Under the second prong, we agree with the circuit court that the other-acts evidence was relevant. Grant argues that the common factors between the three cases was not relevant because it is all circumstantial evidence, and the gun was never linked to Grant. Grant cites no authority for the assertion that evidence is irrelevant because it is circumstantial. "It is well established that a finding of guilt may rest upon evidence that is entirely circumstantial and that circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990). Ballistics reports linked the same gun to all three cases, the victims in all three cases identified a green Buick as being involved in the incidents, and Grant was linked to the green Buick because

8

he was involved in a traffic stop while driving the green Buick and social media photographs show Grant in the green Buick. Thus, the evidence is relevant to the proper purposes of establishing preparation, plan, and identity.

¶19 Under *Sullivan*'s third prong, we agree with the circuit court that the probative value of the other-acts evidence is not substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Unfair prejudice arises when evidence "has a tendency to influence the outcome by improper means," that is, evidence that "causes a jury to base its decision on something other than the established propositions in the case." *Id.*, 216 Wis. 2d at 789-90.

¶20 Grant argues that the jury would be so influenced by the other-acts evidence that it would be likely to convict him on improper factors because the other-acts evidence showed him to be a "bad man." Grant's argument is conclusory, and it ignores the significant probative value of the other-acts evidence, particularly on the issue of identity. Additionally, the circuit court carefully instructed the jury that it had to "make a finding as to each count," that it "must consider each one separately," and that its "verdict for the crime charged in one count must not [affect] your verdict on another count." *See State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989) ("We presume that the jury follows the instructions given to it.").[5]

---

[5] For identical reasons, we also reject Grant's argument that joinder of the three cases caused him "substantial prejudice" because of the danger that the jury would convict him because the other-acts evidence showed him to be a "bad man."

9

¶21    Accordingly, we conclude that the circuit court properly joined all three cases for trial.

### II.    The evidence was sufficient to support Grant's convictions.

¶22    Grant's second argument on appeal is that the evidence was insufficient for a reasonable jury to convict him. We review sufficiency of evidence claims *de novo*. ***State v. Smith***, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. We consider the evidence in the light most favorable to the State and the conviction, and we reverse only when the evidence "is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." ***Poellinger***, 153 Wis. 2d at 507. When the evidence could support contrary inferences, we defer to the jury's findings because "the trier of fact is free to choose among conflicting inferences of the evidence and may, *within the bounds of reason*, reject that inference which is consistent with the innocence of the accused." ***Id.*** at 506 (alteration in original). Therefore, we will affirm a conviction "if there is any reasonable hypothesis that supports it." ***Smith***, 342 Wis. 2d 710, ¶24.

¶23    Specifically, Grant contends that the evidence was not sufficient to identify him as the perpetrator in the three incidents because of inconsistent witness testimony. We disagree.

¶24    At trial, the jury heard witness testimony for all three incidents. As to the July 9th shooting, both Jeff and Morris identified Grant as the shooter in photo arrays shortly after the crime was committed and in court during the trial. As to the July 17th shooting, Ben was able to identify Grant from a photo array shortly after the crime was committed, but could not identify Grant as the shooter at trial almost

four years later. As to the July 30th shooting, Joseph insisted at trial that he did not see who shot him, but stated that Grant was merely present at the taco truck when the shooting occurred. However, contrary to Joseph's testimony, two police officers testified that Joseph identified Grant as the shooter when officers presented Joseph with a photo array shortly after the crime was committed.[6] Additionally, an analyst testified that the .45 caliber casings recovered from the three shooting scenes were fired from the same gun, the victims in all three cases identified a green Buick as being involved, and Grant was linked to the green Buick.

¶25 Grant contends that the identification evidence was insufficient due to varying weaknesses in the witnesses' testimony. For example, Grant highlights some discrepancies between Jeff's and Morris's testimonies, points out that Ben failed to identify him in court and provided a description of the shooter that did not match Grant, and observes that Joseph testified that Grant was not the shooter while Andrew testified that he did not see the shooter.

¶26 While Grant has identified reasons why the jury could have discredited the witnesses' identification evidence, "[t]he jury is the ultimate arbiter of a witness's credibility." *State v. Norman*, 2003 WI 72, ¶68, 262 Wis. 2d 506, 664 N.W.2d 97. Given the evidence described above, we cannot conclude that the evidence "is so lacking in probative value and force that no trier of fact, acting

---

[6] The jury had good reason to disbelieve Joseph and instead place weight on the testimony of the police officers. First, Joseph had the opportunity to view Grant before the shooting when he exchanged words with the individual from the green Buick and again when Joseph turned his head while standing in line. Second, the jury could reasonably infer that Joseph's testimony in court was untruthful because Joseph was, at the time, an inmate in prison, and "snitching" on Grant could jeopardize his safety.

11

reasonably, could have found guilt beyond a reasonable doubt." *Poellinger*, 153 Wis. 2d at 507. The evidence at trial was sufficient to convict Grant on all counts.

### III. The circuit court did not erroneously exercise its sentencing discretion.

¶27 Grant's final argument is that the circuit court erroneously exercised its discretion by imposing an unduly harsh and unconscionable sentence. We review whether a circuit court's sentence was unduly harsh and unconscionable for an erroneous exercise of discretion. *State v. Grindemann*, 2002 WI App 106, ¶30, 255 Wis. 2d 632, 648 N.W.2d 507. A sentence is unduly harsh and unconscionable when it "'is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.'" *Id.*, ¶31 (citation omitted). "A sentence well within the limits of the maximum sentence is unlikely to be unduly harsh or unconscionable." *State v. Scaccio*, 2000 WI App 265, ¶18, 240 Wis. 2d 95, 622 N.W.2d 449. Here, the circuit court's fifty-two-year sentence was well within the maximum sentence that Grant faced for his nine convictions, and in fact, Grant's total sentence is less than the maximum sentence that the court could have imposed on the attempted first-degree intentional homicide conviction alone. *See* WIS. STAT. §§ 939.32(1)(a), 939.50(3)(b), 940.01.

¶28 Grant argues that the circuit court did not consider mitigating character information because it did not order a presentence investigation report. This, Grant claims, "constitutes a denial of due process[.]" Grant correctly concedes that WIS. STAT. § 972.15 does not require the court to order a presentence investigation report, but more importantly, Grant cites no authority to support his position, nor does Grant offer any character information that he believes would be

12

mitigating if it had been presented to the circuit court. We do not develop arguments for parties. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶29    Our review of the record reveals that the circuit court considered all relevant sentencing objectives and factors, including the gravity of the offense, the character of the offender, and the need to protect the public. *See State v. Ziegler*, 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76. As to the seriousness of Grant's offenses, the circuit court described Grant's crimes as "very cold-blooded, provoked by nothing reasonable or rational" and later characterized them as "extremely violent and extremely disturbing, cold-blooded, amoral behavior[.]" As to Grant's character, the court did not "see a lot of positive," describing him as "a person who has been getting in trouble with the law, making bad decisions," who has not learned from past mistakes and whose conduct has gotten worse over time. As to the need to protect the public, the circuit court determined that Grant's crimes warranted "a significant penalty" because it was "the type of case where society has to be protected from you for a period of time, because you have shown that you are a dangerous person."

¶30    Accordingly, we conclude that the circuit court did not erroneously exercise its sentencing discretion.

## CONCLUSION

¶31    For the reasons set forth above, the circuit court properly denied Grant's motion for postconviction relief. We therefore affirm the judgments of conviction and the circuit court's order denying postconviction relief.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.